118 P.3d 37

**MONICA C., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY and Amaya C., Appellees.**

**No. 1 CA–JV 04–0165.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 18, 2005.

Terry Goddard, Attorney General By Stacy L. Shuman, Assistant Attorney General, Mesa, Attorneys for Appellee.

Vierling Law Offices By Thomas A. Vierling, Phoenix, Attorney for Appellant.

## OPINION

BARKER, Judge.

¶ 1 In 2003 the Arizona legislature provided that "[a] hearing to terminate parental rights . . . shall be tried to a jury" if a parent requests. Ariz.Rev.Stat. ("A.R.S.") § 8–223 (Supp.2004). The rules of juvenile procedure were then amended to require the State to provide notice to parents of that right. Ariz. R.P. Juv. Ct. 64(C). The issue in this opin-

ion [1] is whether the State's error in failing to provide this notice warrants a new termination hearing. We determine that in this case it does not.

### Facts and Procedural History

¶2 Monica C. ("Monica") appeals from the juvenile court's order terminating her parental relationship with Amaya C. ("Amaya"). On April 2, 2003, Monica gave birth to Amaya. Amaya was born substance exposed and was diagnosed as suffering from congenital syphilis. Amaya remained in the hospital until April 30, 2003. Child Protective Services ("CPS") took temporary custody of Amaya upon her release from the hospital. The Arizona Department of Economic Security ("ADES") filed a dependency petition on May 5, 2003, and a preliminary protective hearing was held on May 9, 2003. At that hearing Monica did not contest temporary custody, and the court ordered Amaya remain in the temporary custody of ADES.

¶3 On May 9, 2003, the court issued orders relating to the custody of Amaya. One order was that visitation between Monica and Amaya be at the discretion of ADES. The court also ordered Monica to undergo a psychological evaluation and Value Options assessment. Finally, ADES was to provide parenting skills training and transportation for Monica's visits with Amaya.

¶4 The court held an initial dependency hearing on June 10, 2003. The court learned there was more than one individual who was potentially Amaya's father. The court was told the alleged fathers had not yet been served. The court then set a publication hearing for August 11, 2003. Prior to that hearing ADES attempted to locate the possible fathers but was unsuccessful. The court found Amaya dependent as to the alleged fathers on August 11, 2003. The court also stated that the case plan was family reunification.

¶5 Monica was scheduled for a psychological evaluation on September 3, 2003. She did not appear at that appointment. Other appointments were made, but she also failed

to attend those appointments. Eventually she was seen on October 6, 2003, but the tests could not be completed that day. Appointments were scheduled again, but she failed to keep them. She was finally seen again on November 16, 2003. According to the evaluation completed pursuant to those visits, Monica has a history of drug use and mental health issues. Monica was diagnosed as suffering from mood disorder, cannabis dependence, mild mental retardation, and dependent personality disorder. The evaluator stated parenting would be "extremely difficult" for Monica and recommended CPS consider "other permanency plans for the child than return to parent" "[d]ue to [Monica's] mental retardation and other mental health and substance abuse problems."

¶6 Monica's case worker sent her a letter on December 12, 2003 asking if she wished to visit Amaya. Monica did not respond to this letter. The case worker sent another letter to Monica and gave her the telephone number to contact Amaya's foster home. Monica did not respond.

¶7 On January 6, 2004, Monica's case was transferred to the Division of Developmental Disabilities. A new caseworker was assigned due to the transfer. That caseworker sent a letter advising Monica of the change but did not receive any response. On January 12, 2004, the court held a report and review hearing on the dependency petition. Monica did not appear for the hearing. At the hearing, Monica's case worker reported little contact with Monica. The court found there was a need for continued out-of-home care for Amaya. The court chose to hold a permanency planning hearing on March 8, 2004.

¶8 At the permanency planning hearing, the caseworker reported Monica was not complying with the case plan. ADES moved to change the case plan to termination and adoption. The court ordered the change in case plan and ordered ADES to conduct a parent locator for Monica.

¶9 On March 18, 2004, ADES filed a motion for termination of parent-child relationship. That motion stated three grounds for termination: 1) Monica had abandoned Ama-

---

1. We also file separately this date a memorandum decision that addresses other issues raised in this appeal. ARCAP 28(g) (allowing for partial publication of decisions).

ya "and failed to maintain a normal parental relationship ... for a period greater than six months"; 2) Monica was "unable to discharge her parental responsibilities because of mental illness, and/or mental deficiency, and/or a history of chronic abuse of dangerous drugs, controlled substances and/or alcohol"; and 3) Amaya had been cared for in an out-of-home placement for a period of nine months or longer. The motion was accompanied by a notice of initial hearing. The notice stated that if Monica failed to appear at the hearing the court could find she had waived her legal rights. There was no mention of a right to a jury trial in the notice. A contested severance hearing was set for July 21, 2004.

¶ 10 Monica had a supervised visit with Amaya on July 9, 2004. The visit lasted one hour. According to Monica's caseworker, it did not appear that Monica and Amaya were bonded.

¶ 11 At the termination hearing, the caseworker testified regarding Monica's psychological evaluation. According to that testimony, Monica had been diagnosed as suffering from a mood disorder. Monica also suffered psychotic symptoms such as hearing voices. The caseworker believed that termination and adoption were in the best interests of Amaya "[b]ecause Monica is not currently stable and she has mental health problems and mild mental retardation."

¶ 12 The court issued written findings of fact and conclusions of law, filed on August 4, 2004. It stated, "[a]ll grounds alleged [for termination] have been proven by the State to the standard of clear and convincing evidence." Accordingly, Monica's parental relationship with Amaya was terminated.

¶ 13 Monica filed a notice of appeal on August 17, 2004. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003), 12–2101(B) (2003), and 8–235(A) (Supp.2004).

### Discussion

¶ 14 Monica argues that her due process rights were violated when she did not receive notice of her jury trial rights. She advances two separate claims under this argument. First, she claims the notice of hearing on the motion to terminate did not advise her of the right to a jury trial and requires reversal. Second, Monica claims ADES's failure to provide a copy of the Notice to Parent in Termination Action ("Form III") mandates a reversal and new trial.

### 1. Notice of Right to Jury Trial

¶ 15 Section 8–223 provides as follows:

A hearing to terminate parental rights that is held pursuant to § 8–537 or 8–863 *shall be tried to a jury if a jury is requested* by a parent, guardian or custodian whose rights are sought to be terminated.

A.R.S. § 8–223 (emphasis added). Under Arizona Rule of Procedure for Juvenile Court 66.1(A), "following a timely request, a parent shall have the right to a trial to a jury in a hearing to terminate parental rights." Those rules also provide that "[a] notice of hearing shall accompany the motion or petition for termination of parental rights." Ariz. R.P. Juv. Ct. 64(C). That notice "shall advise the parent ... that failure to appear ... without good cause, may result in a finding that the parent ... has waived legal rights, *including the right to a trial to a jury.*" *Id.* (emphasis added). We first analyze Monica's general due process right to notice and then turn to her statutory right to notice.

¶ 16 "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005). But "parental rights are not absolute." *Id.* "A court may order severance of parental rights under certain circumstances, so long as the parents whose rights are to be severed are provided with fundamentally fair procedures that satisfy due process requirements." *Id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). In termination proceedings, "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Maricopa County Juv. Action No. JS–501904*, 180 Ariz. 348, 355, 884 P.2d 234, 241 (App.1994) (quotation omitted).

■ ¶ 17 Neither the Arizona Constitution nor the federal constitution requires a jury trial for severance proceedings, although some states (including Arizona) have made that provision on a statutory basis. *See generally* James L. Buchwalter, Annotation, *Right to Jury Trial in Child Neglect, Child Abuse, or Termination of Parental Rights Proceedings,* 102 A.L.R. 5th 227 (2004) (discussing other states' constitutional and statutory bases for right to jury trial in severance proceeding). Indeed, until A.R.S. § 8–223 was amended in 2003,[2] there was no *ability* or *authority* for a court to convene a jury for a severance proceeding, let alone a constitutional *mandate* that required a jury. In other settings involving juveniles, the Supreme Court has also confirmed that a jury trial is not constitutionally required. *See McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (holding the federal constitution does not require a jury trial for juvenile delinquency proceedings). Our own supreme court has also stated, in a juvenile setting, that "we disagree with the ... assertion that a jury trial provides more protection for the due process rights of the juvenile than does an adjudication before a judge." *David G. v. Pollard ex rel. County of Pima,* 207 Ariz. 308, 314, ¶ 26, 86 P.3d 364, 370 (2004).

■ ¶ 18 Monica was given notice of the reasons ADES was seeking termination by the motion for termination. *See Juv. Action No. JS–501904,* 180 Ariz. at 355, 884 P.2d at 241 (finding "adequate notice" of grounds for termination satisfied due process). Also, at the termination hearing Monica was given an opportunity to cross-examine witnesses as well as testify on her own behalf. *See id.* (finding due process satisfied when parent was given "opportunity to defend against the allegations"). Due process was satisfied.

■ ¶ 19 Admittedly, Monica was not provided formal notice of the right to jury trial. This was error by the State, and its counsel had a duty to provide that notice. Monica's counsel, however, also had a duty to advise her of the right to a jury trial even absent notice by the State. *See In re Wines,* 135 Ariz. 203, 206, 660 P.2d 454, 457 (1983) ("We charge lawyers with knowledge of what the law requires and place them under an affirmative duty to accomplish what is required of them."); *Mageary v. Hoyt,* 91 Ariz. 41, 46, 369 P.2d 662, 665 (1962) ("Certainly an attorney owes a duty of utmost good faith to his client and must inform his client of matters that might adversely affect his client's interests.") (citation omitted). Importantly, Monica does not claim that she did not *know* of her right to a jury trial. She only claims that she did not receive *notice* from the court. On these facts, Monica was not denied her right to due process.

¶ 20 Beyond the general due process right to notice, Monica also asserts a right to notice under court rules. We agree with this assertion. As noted above, Rule 64 of the Arizona Rules of Procedure for Juvenile Court specifically requires notice by the State that failure to appear may result in waiver of "the right to trial to a jury." Ariz. R.P. Juv. Ct. 64(C). The notice provided Monica did not comply with this rule. The notice advised Monica that her failure to appear at the hearing might lead the court to find she waived her legal rights, but there was no specific mention of the right to jury trial.

¶ 21 Monica asserts this failure to strictly comply with the rules of procedure constituted a violation of her right to due process. *See Maricopa County Juv. Action No. JS–734,* 25 Ariz.App. 333, 338, 543 P.2d 454, 459 (1975) (observing parental rights may not be severed "without due process and compliance with the statutes involved").[3] We agree

---

**2.** The statute allowing a parent to request a jury trial in a termination of parental rights proceeding contains a delayed repeal clause. 2003 Ariz. Sess. Laws, ch. 6, § 45. Pursuant to that clause, the statute will be "repealed from and after December 31, 2006." *Id.*

**3.** We note that the *statutory* scheme does not require that the notice refer to a jury trial.

A.R.S. § 8–535(A) (Supp.2004). This is so even though the statute gives a specific form for the notice. *Id.* The statute provides:

The notice required by the subsection shall include the following statement:
You have a right to appear as a party in this proceeding. The failure of a parent to appear at the initial hearing, the pretrial conference, the status conference or the termi-

ADES should have provided notice in compliance with Rule 64. *See Levinson v. Jarrett ex rel. County of Maricopa*, 207 Ariz. 472, 475, ¶ 10, 88 P.3d 186, 189 (App.2004) ("Rules should be construed to give effect to their plain language, if possible."). We also agree that ADES's failure to comply with the rule of procedure was error. *See Creach v. Angulo*, 189 Ariz. 212, 214, 941 P.2d 224, 226 (1997) (observing it was clearly error for court not to comply with civil procedure rules). But error alone, unless it is structural, does not mandate reversal. *See State v. Henderson*, 115 P.3d 601, 456 Ariz. Adv. Rep. 10, 12, ¶ 17 (July 8, 2005) (distinguishing between structural error and error that is subject to trial error analysis); *State v. Ring*, 204 Ariz. 534, 552, ¶ 45, 65 P.3d 915, 933 (2003) (stating structural error requires reversal, but trial error requires further analysis).

■ ¶ 22 Failure to comply with the Arizona Rules of Procedure for Juvenile Court does not necessarily require a reversal. *See In re Melissa K.*, 197 Ariz. 491, 494, ¶ 8, 4 P.3d 1034, 1037 (App.2000) (observing failure of court to comply with rules may or may not require reversal). Because noncompliance with the rules does not mandate reversal, noncompliance cannot be termed structural error. *See State v. Hickman*, 205 Ariz. 192, 199 n. 7, ¶ 29, 68 P.3d 418, 425 n. 7 (2003) ("[S]tructural errors require automatic reversal."). Instead, noncompliance with the rules falls under either the harmless error (if an objection was made) or fundamental error (if no objection was made) framework. *Henderson*, 115 P.3d 601, 456 Ariz. Adv. Rep. at 12, ¶¶ 18–19; *State v. Kayer*, 194 Ariz. 423, 430, ¶ 18, 984 P.2d 31, 38 (1999) ("Because no objection was made ... at trial, we review the claim only for fundamental error."); *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) (evaluating errors raised below under harmless error standard when objection was raised). As there was no objection below, we employ the fundamental error framework here.

nation adjudication hearing may result in an adjudication terminating the parent-child relationship of that parent.

■ ¶ 23 Our cases also hold that "[t]he doctrine of fundamental error is sparingly applied in civil cases and may be limited to situations [that] deprive[ ] a party of a constitutional right." *Bradshaw v. State Farm Mut. Auto. Ins.*, 157 Ariz. 411, 420, 758 P.2d 1313, 1322 (1988). Because of the constitutional ramifications inherent in termination proceedings, we apply the doctrine of fundamental error here. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("[T]he interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized...").

■ ¶ 24 Fundamental error is defined as error "which 'goes to the very foundation' of a case." *Data Sales Co. v. Diamond Z Mfg.*, 205 Ariz. 594, 601, ¶ 31, 74 P.3d 268, 275 (App.2003) (quoting *State Consol. Publ'g Co. v. Hill*, 39 Ariz. 163, 167, 4 P.2d 668, 669 (1931)). As our supreme court recently stated, "[t]o establish fundamental error, [the complaining party] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Henderson*, 115 P.3d 601, 456 Ariz. Adv. Rep. at 13, ¶ 24; *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984) (same).

■ ¶ 25 The question whether error is fundamental is "fact intensive." *Bible*, 175 Ariz. at 572, 858 P.2d at 1175. Because of this, "the same error may be fundamental in one case but not in another." *Id.* As our supreme court has held:

Fundamental error, of course, does not occur in the abstract. After determining that *an error* occurred at trial, "the prejudicial nature of the unobjected-to error must be evaluated in light of the entire record" before the error can be labeled as fundamental.

*State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988) (quoting *State v. Thomas*, 130 Ariz. 432, 436, 636 P.2d 1214, 1218 (1981)). In *Henderson*, the supreme court reaffirmed

*Id.*

that there must be prejudice involved in fundamental error to justify relief. 115 P.3d 601, 456 Ariz. Adv. Rep. at 13, ¶ 26 ("Fundamental error review involves a fact-intensive inquiry, and *the showing required to establish prejudice* therefore differs from case to case.") (emphasis added).

¶ 26 Monica did not establish that she did not know of the right to a jury trial and would have opted for a jury trial in any event. Nor did she present evidence that the deficient notice deprived her of a fair trial or otherwise prejudiced her. Monica was represented by counsel at the hearing; Monica, through counsel, was able to cross-examine the witnesses and present argument; and Monica was allowed to testify. She presented no evidence that a reasonable jury would have concluded differently than did the trial judge. The burden of proof, in a fundamental error setting, is on the complaining party. *Id.* at 12, ¶ 19.

¶ 27 We conclude the failure by ADES to provide notice of Monica's right to a jury trial did not deprive Monica of a fair trial. In light of Monica's failure to provide any specific evidence regarding the impact of the lack of notice, the deficient notice was not fundamental error on the record here.

### 2. *Form III Requirement*

¶ 28 Monica's second claim regarding her due process rights is that ADES's failure to provide a copy of Form III of the Arizona Rules of Procedure for Juvenile Court requires a reversal. That form is "[t]o be given to [a] parent at permanency hearing if termination is ordered and each subsequent hearing until termination adjudication and noted on the record." The form is a general statement of the parent's rights and includes the warning that these rights might be waived if the parent fails to appear. Monica is correct that there is no record she was given Form III at the initial termination hearing. But Monica is incorrect that Rule 66 requires the form be given; Rule 66 contains no such requirement. *See* Ariz. R.P. Juv. Ct. 66. But even if we assume that ADES erred by not providing Form III, such error would not be fundamental.

¶ 29 Again, Monica did not object to the lack of Form III below, meaning fundamental error analysis applies. *Henderson,* 115 P.3d 601, 456 Ariz. Adv. Rep. at 12, ¶ 19. Form III lists four specific rights: "[t]he right to counsel"; "[t]he right to cross-examine witnesses"; "[t]he right to trial by the court on the allegations in the termination motion"; and "[t]he right to use the process of the court to compel the attendance of witnesses." At the "trial by the court on the allegations in the termination motion" Monica was represented by counsel and that counsel cross-examined witnesses. There was no evidence Monica was denied the right to compel witnesses. Because Monica was aware of, and took advantage of, the rights set forth in Form III, any failure by ADES to provide a copy of Form III was not fundamental error. There is no indication that she was prejudiced by failure to receive Form III. *See, e.g., Henderson,* 115 P.3d 601, 456 Ariz. Adv. Rep. at 13, ¶ 26.

### *Conclusion*

¶ 30 For the foregoing reasons, and those in the simultaneously filed memorandum decision, the judgment of the juvenile court is affirmed.

CONCURRING: MAURICE PORTLEY and SUSAN A. EHRLICH, Judges.

