NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ENRICO G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.G., A.G., K.G., *Appellees*.

Nos. 1 CA-JV 15-0098, 1 CA-JV 15-0099 (Consolidated)
FILED 9-24-2015

Appeal from the Superior Court in Maricopa County
Nos. JD27407 and JD27378
The Honorable Bradley Astrowsky, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1        In this consolidated appeal, Enrico G. ("Father") appeals the juvenile court's orders terminating his parental rights to his biological children - E.G., A.G., and K.G. (collectively, "the children") - on the grounds of chronic abuse of dangerous drugs and nine or more months' care in an out-of-home placement.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2        The children were born between June 2010 and October 2013. In November 2013, Father, who is visually impaired and suffers from post-traumatic stress disorder ("PTSD") after being shot in the head, was involved in a violent domestic relationship with Martika M., the mother of E.G. and A.G.   Father also had a daughter, K.G., from a previous relationship who lived with him,[2] and Martika M. had at least three other biological children from previous relationships.

¶3        Both Father and Martika M. have a history of substance abuse, and Father admittedly uses methamphetamine and marijuana.   Father would often leave K.G. in the care of Martika M., despite knowing Martika M. did not like K.G. and would neglect and/or abuse her.

---

[1]      We view the facts and the reasonable inferences therefrom in the light most favorable to sustaining the juvenile court's determinations. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009).

[2]      K.G.'s mother had not been in her life since birth.

¶4        On November 13, 2013, the Department of Child Safety ("DCS")[3] initiated a dependency petition (case number JD27378) as to K.G., alleging K.G. was dependent as to Father due to abuse or neglect.[4]  The petition alleged Father had neglected K.G. due to his substance abuse while caring for her, exposing K.G. to domestic violence, and Father's mental health issues.  The petition further alleged Father had reported "he uses methamphetamine to address complications from post[-]traumatic stress disorder," and that Father failed to protect K.G. from Martika M.'s physical abuse.  Shortly thereafter, ADES initiated a second dependency petition (case number JD27407) as to E.G. and A.G., alleging Father neglected them due to substance abuse and failing to provide the basic necessities of life, and abused them by failing to protect them from the domestic violence between him and Martika M.[5]  In addition to the assistance of counsel, Father was appointed a guardian ad litem to represent his interests.

¶5        In January 2014, E.G., A.G., and K.G. were adjudicated dependent as to Father.  The court ordered case plans of reunification concurrent with severance and adoption.  In support of the case plans, the court ordered that Father receive substance testing by TASC, substance abuse treatment services provided by TERROS, parent aide services upon demonstration of sobriety, transportation, domestic violence counseling,

---

[3]        At the outset of these proceedings, the children were taken into care by Child Protective Services ("CPS"), formerly a division of the Arizona Department of Economic Security ("ADES"), and ADES filed both dependency petitions in this case.  In May 2014, CPS was removed as an entity within ADES and replaced by DCS, an entity outside of ADES.  *See* 2014 Ariz. Sess. Laws, ch. 1, §§ 6, 20, 54 (2d Spec. Sess.).  Accordingly, DCS has been substituted for ADES in this matter.  *See* ARCAP 27.  References to DCS encompass both ADES and the former CPS.

[4]        The dependency petition also alleged K.G. was dependent as to her biological mother, whose parental rights were ultimately terminated.  K.G.'s biological mother is not a party to this appeal.

[5]        The dependency petition also alleged E.G. and A.G. were dependent as to Martika M., and alleged Martika M.'s three other minor children residing with her were dependent as to her and their fathers.  The parental rights of Martika M. as to all five children and the parental rights of the other children's fathers were ultimately terminated.  Neither Martika M. nor the other fathers are parties to this appeal.

and visitation.[6]  Father, however, was generally noncompliant with services, and his attendance at report and review hearings was sporadic.

¶6        In October 2014, DCS moved to terminate Father's parental rights as to all three children on the grounds of an inability to discharge parental responsibilities due to chronic substance abuse pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3)[7] and the children's ongoing need for out-of-home placement for nine months or longer pursuant to A.R.S. § 8-533(B)(8)(a).   DCS alleged that, as to Father's substance abuse, Father had been inconsistent in submitting to testing – causing multiple service referrals to be closed out - and on the occasions he did provide samples, Father had tested positive for amphetamine, methamphetamine, and marijuana.  Father had also been recommended to participate in an intensive outpatient program through TERROS, but had failed to engage with the program, and although he had expressed a desire to engage in an inpatient program, he had made no steps toward that goal, despite being provided a list of community resources for him to engage in an inpatient facility.  DCS further alleged Father had been inconsistent in visiting the children, often cancelling or showing up unprepared, had failed to obtain stable housing or employment as required for reunification, and had failed to demonstrate any of the behavioral changes outlined in his case plan.

¶7        An initial severance by motion hearing was conducted on December 11, 2014, in both matters as to all three children.  Father, however, did not appear at the hearing.  The court found no good cause for Father's absence and that he had waived his right to contest the allegations contained in the termination motions, *see* Ariz. R.P. Juv. Ct. 65(D)(3), but did not take testimony or rule on DCS's severance motions.  Instead, the court gave Father leave to file a motion "to show there's good cause for his failure to appear and that there's a meritorious defense to the motion,"

---

[6]        Nothing in the record indicates Father, his attorney, or his guardian ad litem objected to these services, suggested they were inadequate, or requested any additional services at that time.

[7]        We cite the current version of the statutes if no revisions material to our decision have occurred since the relevant dates.

consistent with this court's admonition in *Christy A. v. Arizona Department of Economic Security*, 217 Ariz. 299, 173 P.3d 463 (App. 2007).[8]

**¶8**         On February 19, 2015, Father filed a "Motion to Set Aside Default Judgment and Termination of Parental Rights" in both cases, arguing his good cause for not attending the December 11, 2014 hearing was that he was "suffering from a psychotic break, and was unable to make any rational decision."[9]  The motion did not include any allegation Father had a meritorious defense.  No additional evidence was provided.  DCS responded, objecting to the motion and noting Father had presented no evidence supporting his claim of a "psychotic break," and had failed to allege, let alone prove, a meritorious defense to the severance motion.

**¶9**         On February 25, 2015, the court held a hearing on Father's motion to set aside the waiver.  At the hearing, the court pointed out Father's parental rights had not yet been terminated and "the Court just found that he waived his right to have a contested trial" as a result of his earlier absence.  The court went on to address Father's motion, indicating it "didn't see anything in the motion that indicated that [Father] was in a facility at that particular time" and offered Father an opportunity to provide additional evidence, specifically requesting whether there was something Father would like to present to supplement the record.  No supplements were offered.

**¶10**         Presented with no additional evidence to support Father's motion, the court found Father had presented no good cause for his failure to appear.  The court further found Father's motion did not comply with the requirements of *Christy A.* because it lacked any evidence or allegation of a meritorious defense; accordingly, the court denied the motion.

---

8         Meanwhile, Father and Martika M. continued to be involved in a violent relationship - Martika M. was cited for disorderly conduct (domestic violence) on January 2, 2015 - and Father continued to not participate in services.

9         On January 6, 2015 (approximately one month after Father's failure to appear), Father had an in-person psychological consultation with Christina K. Lebovitz, Ph.D.  Dr. Lebovitz opined that, at that time, Father was not coherent and was displaying psychotic symptoms.  At a meeting with his case manager earlier that day, Father had admitted recently using methamphetamine.  However, Father "declined crisis services, inpatient and outpatient treatment" offered through his case manager.

**¶11** On March 10, 2015, the juvenile court heard evidence as to the severance of all three children. The children's caseworker recommended termination of Father's rights as to the three children. She testified Father had been provided access to substance abuse testing and treatment, community resources for inpatient treatment, and multiple referrals for the same, but had not exhibited any meaningful engagement in the services offered. Throughout her contact with Father, he tested positive for marijuana and methamphetamine, failed to submit to testing on multiple occasions, and allowed his referrals for treatment to lapse several times as a result of non-participation. The caseworker opined that she believed Father's chronic substance abuse rendered him incapable of discharging his parental duties and responsibilities and that termination was in the children's best interest.

**¶12** The court found pursuant to A.R.S. § 8-533(B)(3) that DCS had proven Father was unable to discharge his parental responsibilities as a result of a history of chronic abuse of dangerous drugs, and there were reasonable grounds to believe this condition would continue for a prolonged and indeterminate time. Additionally, the court found pursuant to A.R.S. § 8-533(B)(8)(a) that the children had been in an out-of-home placement under the supervision of the court for nine months or longer, and Father had substantially neglected to remedy the circumstances leading to the placement. The court also found DCS had made diligent efforts in providing Father with appropriate reunification services. Finally, the court found by a preponderance of the evidence that termination of Father's parental rights was in the children's best interest, and terminated Father's parental rights to all three children.

**¶13** Father filed timely notices of appeal. We have appellate jurisdiction over these consolidated appeals pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. § 8-235(A), and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

**¶14** On appeal, Father raises several issues, arguing the juvenile court erred in denying his motion to set aside, in failing to find good cause for his absence, and in requiring him to demonstrate he had a meritorious defense. We disagree with Father's arguments.

**¶15** Because a finding of good cause for failure to appear is largely discretionary, this court reviews such a finding for an abuse of discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15, 158 P.3d 225, 230

(App. 2007). In analogizing waiver in this context to defaults in civil cases, this court has found that a waiver in the severance context is properly set aside with a showing of "good cause." *Christy A.*, 217 Ariz. at 304, ¶ 16, 173 P.3d at 468. To prove good cause, a party must show that mistake, inadvertence, surprise, or excusable neglect exists *and* that a meritorious defense to the claim exists. *Id.*

**¶16** Father's only assertion in support of his good cause argument was that he was experiencing a "psychotic break," rendering him unable to make any rational decisions. Father, however, provided no corroborating evidence such as medical records, testimony, or other evidentiary support verifying his condition or location as of the date of the missed hearing. Moreover, when presented with an opportunity to provide evidence explaining his absence, Father elected not to supplement the record.

**¶17** Father further argues the court erred in requiring him to demonstrate any meritorious defense because he had not yet received mental health treatment,[10] and therefore his meritorious defense had not yet ripened. If Father required additional services, those could have been requested through counsel or his guardian ad litem.[11] Moreover, if Father believed he had no obligation to provide a meritorious defense, that issue should have been addressed in his motion to the court to preserve the issue for appeal. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21, 153 P.3d 1074, 1081 (App. 2007) (holding that issues cannot be raised for the first time on appeal). In any event, this argument fails as completely inconsistent with the well-established practice outlined in *Christy A.* and the juvenile court's order in this case. The juvenile court did not abuse its discretion in finding there was not a good cause for Father's absence.

**¶18** Father also argues the court should have held an evidentiary hearing to resolve any questions about the legitimacy of his claimed psychotic break. Although Rule 65(C)(6)(c), Ariz. R.P. Juv. Ct., would appear to refute Father's underlying premise that the court was required to hold such a hearing, we need not address the correctness of that premise, as the record on appeal makes clear the court afforded Father ample opportunity to introduce evidence and explain his absence before making

---

[10] Father's mental health issues were not a basis for severance.

[11] Along with other requests made and approved by the court, Father's counsel *did* ask that he be permitted to attend NOVA for substance abuse treatment as opposed to TERROS, suggesting counsel was aware Father could request alternate or additional services if necessary.

any determination as to Father's motion and severance. During the missed initial severance hearing, the court invited Father, through counsel, to file a motion consistent with *Christy A.*, refrained from proceeding with evidence on the severance until hearing the motion, conducted a hearing to discuss Father's motion, and affirmatively requested that Father provide evidence in support of his motion. Father was provided an adequate opportunity to provide evidence before the court ruled on the termination of parental rights, but did not do so. A further evidentiary hearing asking for the same would have been duplicative.

¶19 To the extent Father is asking this court to evaluate DCS's diligence with respect to the provision of services,[12] our review is limited to determining whether there was fundamental error. *See Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 22, 118 P.3d 37, 42 (App. 2005) (holding that failure to object to an issue in the juvenile court preserves review for fundamental error only). An error is fundamental when it erodes all likeliness the complaining party received a fair trial. *See id.* at ¶¶ 23-24.

¶20 Father had both an attorney and a guardian ad litem, and Father and DCS agreed on the services Father would receive. Father attended several report and review hearings after that, and at each hearing, the juvenile court found that DCS had made "reasonable efforts." Although Father failed to appear at several hearings, neither his attorney nor his guardian ad litem objected to the nature or quality of the services provided or the court's "reasonable efforts" findings at those hearings. Father has not provided any explanation as to why mental health services were not requested or evidence that he would have participated in the additional services.[13] At the severance hearing, Father was represented by counsel and permitted to cross-examine witnesses and present his argument, but made no claim that he should have been offered more or different services.

¶21 In any event, substantial evidence supports the juvenile court's findings that DCS made "diligent efforts to provide appropriate

---

[12] Father did not argue the services provided were inadequate. As a general matter, we do not consider issues first raised on appeal. *Christy C.*, 214 Ariz. at 452, ¶ 21, 153 P.3d at 1081.

[13] Dr. Lebovitz noted in her evaluation of Father that Father had received therapy for his PTSD, but discontinued the therapy after two sessions and refused to take the Cymbalta that was prescribed for him; instead, he "used marijuana to decrease his anxiety and also used meth[amphetamine], opiates and ecstasy."

reunification services [to Father]." *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81-82, ¶ 13, 107 P.3d 923, 927-28 (App. 2005). DCS presented testimony from Father's caseworker indicating Father had been offered a myriad of relevant services - including substance testing and treatment services, transportation, domestic violence counseling, and visitation, as well as the opportunity for both outpatient and inpatient services - but did not exhibit any meaningful engagement. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994) (stating that DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers"). The evidence supports the juvenile court's conclusion that the approved reunification services were appropriate to address Father's issues. No error occurred, much less fundamental error.

## CONCLUSION

**¶22** For the foregoing reasons, the juvenile court's orders terminating Father's rights to the children are affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama