NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LEON M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.M., A.M., M.M., *Appellees.*

No. 1 CA-JV 17-0497
FILED 5-10-2018

Appeal from the Superior Court in Maricopa County
No. JD34142
The Honorable Joseph C. Welty, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Maria Elena Cruz joined.

---

**W E I N Z W E I G**, Judge:

**¶1**        This appeal concerns a juvenile dependency hearing.  Leon M. appeals the superior court's order declaring his three children dependent.  We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        Leon M. ("Father") and Shamika B. ("Mother") are the biological parents of three minor children, J.M., A.M. and M.M.  Father lived in Wisconsin.  His children meanwhile lived in Arizona with their Mother and four half-siblings until April of 2017, when one of the half-siblings died of asphyxiation.  The Department of Child Safety ("DCS") investigated and concluded that J.M., A.M. and M.M. were unsafe and Father had made "minimal to no efforts to support and communicate with the children and [had] not seen the children in an extended period of time."  DCS seized temporary custody of the children and filed a dependency petition concerning both parents, including against Father based on neglect due to abandonment.[1]

**¶3**        Father was served with the dependency petition on April 24, 2017.  The superior court held an initial hearing on May 25, 2017, and a pretrial conference on June 11, 2017.  Father was permitted to telephonically participate in both.  The court held a status conference on August 1, 2017.  Again, Father appeared telephonically.  His counsel appeared in person all three times.

**¶4**        The court then ordered a dependency hearing for October 25, 2017, to determine whether J.M., A.M. and M.M. were dependent under A.R.S. § 8-201(15)(a).  Unlike before, the court directed Father to personally appear at the hearing.

**¶5**        Six days before the hearing, Father asked the court for permission to appear telephonically, stating he was "financially unable to

---

[1]        Mother did not contest the allegations, however, and is not a party to this appeal.

afford to come to Arizona for the trial." DCS objected. The court denied Father's motion.

**¶6** The dependency hearing arrived. Father's counsel appeared, but Father did not. He instead called the court, was patched into the courtroom and again asked for permission to appear telephonically. The superior court again refused, reiterating that his motion to telephonically appear had been denied and directing "you may hang up now." Father hung up. His counsel did not object.

**¶7** The hearing proceeded with testimony from one witness, the DCS case manager, who indicated that Father had never cared for or financially supported J.M., A.M. and M.M. She further testified that Father maintained only occasional telephonic contact with them.

**¶8** At one point, DCS's counsel asked the case manager to confirm that Father knew his children had been removed and placed in foster care since April 2017. Father's counsel objected, arguing the case manager could only speculate about Father's knowledge. The court did not entertain the objection and instead ruled that Father's counsel was "not entitled to make objections on [Father's] behalf" because Father had waived his presence at the hearing. Father's counsel never objected and remained silent for the remainder of the examination. He introduced no evidence and examined no witnesses. The court ultimately found the children were dependent and Father had abandoned them.[2]

**¶9** Father timely appealed. We have jurisdiction pursuant to Ariz. Const. art. VI, § 9 and A.R.S. §§ 8-235(A), 12-2101(A)(1).

## DISCUSSION

### A. Denial of Permission to Telephonically Appear.

**¶10** Father first argues the superior court erred when it denied his motion to appear telephonically. We review for a clear abuse of discretion. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 234, ¶ 13 (App. 2005).

**¶11** Arizona courts "may permit" parents to appear via telephone for a dependency hearing, but they're not required to do so. Ariz. R.P. Juv. Ct. 42; *Willie G.*, 211 Ariz. at 234, ¶ 14 (superior court has "the authority, but not an obligation, to allow the parents to appear by telephone

---

[2] Father had not disclosed any evidence that he would present at the hearing under Ariz. R.P. Juv. Ct. 44(A).

rather than in person"). The determination of what constitutes good cause for a parent's inability to appear is "largely discretionary." *Willie G.*, 211 Ariz. at 234, ¶ 13.

**¶12** We find no clear abuse of discretion. The dependency hearing is an important moment in the judicial process to assess and determine a child's best interest. The court reasonably found that it needed to personally observe Father at the dependency hearing to reach a meaningful and informed decision on his credibility and the children's future. Until that point, the superior court had allowed Father to telephonically participate.

**¶13** We recognize that travel might have posed a financial burden on Father, but that burden is relative to and cannot be divorced from the hearing's purpose and consequence. In addition, Father provided no documents or information for the superior court to assess his financial need. Given the gravity of a dependency proceeding, it was reasonable for the court to expect and require more from Father than his mere plea of poverty. With actual evidence of financial distress, the court could have weighed Father's precise burden against the important benefits arising from Father's physical appearance and participation at an evidentiary proceeding to determine his children's future.

**¶14** What is more, Father had nearly three months to research and arrange any means or method of transportation. He also had several months to at least inform the court of his financial concern. Yet, he waited until six days before the hearing to file his motion to appear telephonically.

**B. Due Process Arguments.**

**¶15** Father next maintains the superior court deprived him of due process when it denied his motion to appear telephonically. But due process only required that Father receive notice reasonably calculated to inform him of an action. *See Monica C. v. Ariz. Dep't. of Econ. Sec.*, 211 Ariz. 89, 92, ¶ 16 (App. 2005). Father received notice of the dependency hearing almost three months in advance.

**¶16** Father likewise argues he was denied due process because the superior court "should have allowed [him] to remain at his trial." Neither Father nor his counsel objected, however, meaning the issue was not preserved for appeal. We thus review for fundamental error. Father must demonstrate the superior court erred, the error was fundamental and resulted in prejudice. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447-48, ¶ 38 (2018). An error is fundamental if it deprived the aggrieved party

of a fair trial. *Monica C.*, 211 Ariz. at 94, ¶ 24. And to demonstrate prejudice, Father must show that but for the error, the court could have reached a different result. *Brenda D.*, 243 Ariz. at 447-48, ¶ 38.

**¶17** Father has not shown fundamental error. Even if the court erred, Father never demonstrated prejudice arising from the error. He has not shown, for instance, the court would have heard different facts or could have reached a different conclusion. Father had few, if any, options to alter the outcome. He never disclosed evidence or indicated his intent to offer evidence at the hearing. And having not physically appeared at the hearing, Father could not contest DCS's factual allegations. Ariz. R.P. Juv. Ct. 55(D)(2). At bottom, Father has not shown and cannot show the result would have been different if he had been granted permission to listen to the hearing from Wisconsin over the telephone.

**¶18** Finally, Father argues the superior court denied him due process by ruling his counsel could not "make objections on his behalf." That was error. In *Brenda D.*, our supreme court recognized that even when a parent fails to appear for a termination hearing "the absent parent does not waive the right to counsel at the hearing." *Brenda D.*, 243 Ariz. at 446, ¶ 30. The Court expressly held "that the absent parent's counsel has a right to fully participate in the hearing on the parent's behalf, including a right to cross-examine the state's witnesses, object to proffered evidence, and present witnesses or other evidence." *Id.* Though *Brenda D.* involved a termination hearing, its reasoning and analysis apply with equal force in a dependency hearing. Both hearings implicate the same fundamental interest of parents to raise their children without government interference. *Compare Jade K. v. Loraine K.*, 240 Ariz. 414, 416, ¶ 6 (App. 2016) (describing fundamental interest of parents in termination proceeding), *with Carolina H. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 569, 571, ¶¶ 6-7 (App. 2013) (describing interest of parents in dependency proceeding).

**¶19** The error was not fundamental, however, because Father has not shown it resulted in the admission of any improper testimony or inadmissible evidence. Nor has Father pointed us to any testimony he might have elicited to change the superior court's ruling.

**CONCLUSION**

**¶20** The superior court did not abuse its discretion by denying Father's motion to appear telephonically and Father has not demonstrated fundamental error on his due process claims. We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA