NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SILVINO L., *Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, D.V., L.V., *Appellees.*

No. 1 CA-JV 19-0136
FILED 01-07-2020

Appeal from the Superior Court in Maricopa County
No. JD14369
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Kent E. Cattani joined.

---

**M O R S E**, Judge:

¶1        Silvino L. ("Father") appeals the juvenile court's decision terminating his parental rights to his children, D.V. and L.V. ("Children"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        D.V. and L.V. were born in 2005 and 2008, respectively. Rosalina M. Ruelas ("Mother") tested positive for amphetamines two days prior to giving birth to D.V., resulting in a 2005 dependency action. Despite this, D.V. was ultimately returned to Mother. In 2008, Father was deported to Mexico. The two children then moved to Mexico and resided with both parents from 2008 to 2013. Father provided all necessities. He was an involved father and participated in raising the Children.

¶3        In 2013, Mother returned to the United States with the Children to visit her family. During approximately the first year the Children were in Arizona, Father expected they would return to Mexico with Mother. He spoke to them on the phone frequently. The Children never returned to Mexico and, according to Father's testimony, they cannot speak Spanish. He sent money to Mother approximately a half-dozen times.

¶4        While residing in Arizona, Mother used methamphetamines periodically. In July 2017, Mother and the Children were temporarily living in the home of a relative. Police raided the house and recovered eight pounds of marijuana, guns, a drug-ledger, and at least $40,000 in cash. The Children were present at the time of the raid. Mother was convicted of the sale or transportation of marijuana.

¶5        The Department of Child Safety ("DCS") took custody of the Children and filed a petition for dependency as to both parents. Despite efforts by DCS, Father was not served in Mexico and DCS did not hear from him regarding the dependency action. The juvenile court found the

Children dependent as to Father.  Eventually, DCS filed for severance as to both parents.

¶6        After Father learned that the Children had been taken into DCS custody he contacted Mexican officials and a local attorney.  A consolidated trial was held.  Although Father had not appeared at the dependency hearing, he participated by phone at the severance hearing.  Both parents testified.  Mother, at that time, was serving a prison sentence.  Father testified that he had had a "marvelous" relationship with the Children when they were in Mexico.  When Mother and Father broke up, he lost contact with them for "many months."  He did not send cards or gifts to the Children.  He spoke to them on the phone occasionally, although he claims communication was difficult due to the language barrier.

¶7        Father objected to severance and sought to have the Children returned to him in Mexico.  Father indicated he could support the Children and that they would resume living in the same house they had previously lived in.

¶8        The DCS caseworker testified that there was little contact between Father and DCS after the initial intervention.  And, for the year prior to trial, Father had no phone contact with the Children.  Because Father was not able to return to the United States, he could not participate in reunification services.  The Children were adoptable and expressed the desire to be adopted while continuing to remain in communication with their biological parents.

¶9        The juvenile court granted severance as to both parents.  Father's rights to the Children were terminated pursuant to A.R.S. § 8-533 (A) and (B)(1) (abandonment).[1]  Father timely appealed.  Mother is not a party to the appeal.

¶10        This Court has jurisdiction under A.R.S. §§ 8-235, 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶11        A parent's right to custody and control of his own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000).  "The government may not interfere with

---

[1]        Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

that fundamental right unless a court finds that: (1) the parent is unable to parent the child for any reason defined by statute; and (2) the parent has been afforded due process." *Carolina H. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 569, 571, ¶ 6 (App. 2013); A.R.S. § 8-533(B). "In termination proceedings, due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 92, ¶ 16 (App. 2005) (citing *Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 355 (App. 1994)). Additionally, "[i]f a juvenile, parent or guardian is found to be indigent and entitled to counsel, the juvenile court shall appoint an attorney to represent the person or persons." A.R.S. § 8-221(B).

¶12        On appeal, Father asserts that: (1) his due process rights were violated in the 2018 dependency action and (2) the juvenile court erred in finding severance warranted in 2019 on grounds of abandonment.

¶13        Father did not appear to contest the 2018 dependency action. Father contends that the juvenile court erred in finding that DCS made diligent efforts to serve him, in failing to appoint an attorney in a timely manner, and in proceeding with the dependency in 2018 based on publication — a decision which eventually led to severance. However, a dependency determination is a final appealable order. *In re Yavapai Cty. Juv. Action No. J-8545*, 140 Ariz. 10, 13-14 (1984). The dependency action is moot once the severance has occurred, because the court determines dependency based on the circumstances existing at that time. *See Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, 515, ¶ 10 (App. 2000). Therefore, we find Father has waived these claims by failing to appeal the dependency**.**

¶14        We next examine Father's assertion that he never abandoned the Children. In order to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground specified in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the Children. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 280, 288, ¶¶ 1, 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Father did not directly challenge that severance and adoption were in the Children's best interests. Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this Court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

¶15        Under A.R.S. § 8-531(1), "abandonment" is:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision.   Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

Abandonment is measured, "not by a parent's subjective intent, but by the parent's conduct."  *Michael J.*, 196 Ariz. at 249, ¶ 18.   And even when circumstances prevent a parent "from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary."  *Id.* at 250, ¶ 22 (quoting *Pima Cty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994)).

¶16        At the severance hearing, the court heard from both parents. Father had not seen the Children since 2013 and had spoken to them only sporadically.  Father sent support payments ranging between twenty-five dollars and fifty dollars to Mother approximately five or six times in the preceding five years.   Although Father asserted he had electronic communication with the Children, he also claimed he did not have the Children's address and therefore could not send gifts, cards, and letters. Given the evidence in the record, the juvenile court's findings of fact supported the court's abandonment conclusion.  *See* A.R.S. § 8-531(1) (including "minimal efforts to support and communicate with the child" in the definition of "abandonment").

## CONCLUSION

¶17        For the foregoing reasons, we affirm the judgment of the juvenile court terminating Father's parental relationship with the Children.

