NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO C.W.

No. 1 CA-JV 23-0026
FILED 12-12-2023

Appeal from the Superior Court in Maricopa County
No. JS520184
The Honorable Cynthia L. Gialketsis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Nicholas W., Gilbert
*Appellee*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

**H O W E**, Judge:

**¶1**　　　　In this private termination proceeding, Megan C. ("Mother") appeals from the juvenile court's order terminating her parental rights to her son C.W., 13 years old at the time of the order. She challenges the sufficiency of the evidence to support the court's findings that she abandoned her son, *see* A.R.S. § 8–533(B)(1), and that termination of her parental rights was in C.W.'s best interests. Because reasonable evidence supports the court's order, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Nick W. ("Father") and Mother were married in 2009 and divorced in 2017. The divorce decree awarded the two joint legal decision-making authority and equal parenting time. At Father's request, the court modified the parenting schedule in September 2019 when Mother's difficulty transporting C.W. to school caused multiple tardy arrivals and absences. This modification made Father the primary residential parent, with Mother having unsupervised parenting time on alternate weekends during the school year and alternate weeks during the summer. This arrangement lasted only until early 2020, when C.W. disclosed that he had seen Mother abusing drugs in her home. While Mother denied the allegation, the Department of Child Safety ("DCS") became involved, and the parties agreed that Mother's parenting time would be supervised. Mother was also required to participate in weekly drug testing.

**¶3**　　　　In June 2020, Father petitioned for sole legal decision-making authority and modification of Mother's supervised parenting time. The court granted Father's petition, finding that Mother failed to comply with the court's drug testing orders by missing at least one test. The court then set a new supervised parenting time schedule under which Mother could expand her parenting time and eventually have unsupervised parenting

time if she complied with weekly drug testing for six months without a missed or positive test.

¶4            In March 2022, Father petitioned the juvenile court to terminate Mother's parental rights, alleging that she had failed to undergo the required drug testing, made no attempts to coordinate her supervised parenting time, and had ceased attempts to contact C.W. The petition alleged two grounds for termination: abandonment under A.R.S. § 8–533(B)(1), and chronic substance abuse under A.R.S. § 8–533(B)(3). Mother contested the petition, and the matter was set for trial.

¶5            Before trial, Father commissioned Arizona's Children Association ("AZCA"), a nonprofit foster care and social service provider, to conduct a social study. AZCA specialists conducted several interviews with both parties, lasting over 10 hours in total. In the interview with C.W.'s stepmother, she expressed willingness to adopt him. The study concluded that while Mother presented as "honest and forthright" and "an individual who is caring and wants to be a parent to [C.W.]," she had no in-person contact with him since October 2020, no phone contact since September 2021, had sent no cards, gifts, or letters, and owed over $9,000 in child support and fees. The study's author opined that Mother had "abandoned [C.W.] whether this was her intention or not." The study did not, however, recommend termination on the substance-abuse ground, finding Mother's explanations for her missed and positive tests "odd but believable."

¶6            At trial, Mother again denied drug use and testified that Father actively sought to prevent her from contacting C.W. Father disagreed, and offered in evidence his emails to Mother, wherein he suggested three possible state facilities she could exercise her parenting time. Mother claimed that she looked into the facilities, but that they did not offer in-office visits, and that Father had refused to let C.W. visit Mother in her home. On cross-examination, Mother testified that she had not seen C.W. in more than six months, and she had not tried to call him for "a couple months." She regretted that she had not "go[ne] back to court to enforce [her] supervised visits." She was aware that she was over $9,000 in arrears but testified that she had given C.W. $1,000 in 2019. She insisted that termination would not be in C.W.'s best interests because she loved her son and wished he would let her act as his mother. Father argued that termination was in C.W.'s best interests because C.W.'s stepmother wanted to adopt him, and C.W. was thriving and had stability in his current home.

**¶7** The juvenile court granted Father's petition, finding that he had proved the statutory grounds for both abandonment and chronic substance abuse, and that termination was in C.W.'s best interests. Mother timely appealed, and we have jurisdiction under A.R.S. § 8–235(A) and § 12–120.21(A)(1).

## DISCUSSION

**¶8** Mother's opening brief lacks citations to relevant authorities, statutes, and portions of the record. *See* Ariz. R. Civ. App. P. 13(a). Her failure to comply with these rules impedes our ability to evaluate her arguments and address her claims. *See, e.g.*, *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 299 ¶ 28 (App. 2000) (refusing to consider unsupported and undeveloped arguments). Although she is representing herself, she is held to the same standards as a qualified attorney. *Higgins v. Higgins*, 194 Ariz. 266, 270 ¶ 12 (App. 1999). Her failure to comply with applicable court rules, by itself, "may be regarded as sufficient cause for dismissal" of her appeal. *See Drees v. Drees*, 16 Ariz. App. 22, 23 (1971). For his part, Father has not filed an answering brief, which may be considered a confession of reversible error. *See United Bonding Ins. Co. v. Thomas J. Grosso Inv., Inc.*, 4 Ariz. App. 285, 285 (1966). Rather than resolving this appeal on each party's procedural failings, we will exercise our discretion to address the substance of Mother's appeal. *See Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994).

**¶9** Mother argues that the juvenile court erred in terminating her parental rights because Father failed to show by clear and convincing evidence that she abandoned C.W. and that the termination of her parental rights was in C.W.'s best interests. A juvenile court's termination decision is reviewed for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004). Due process requires assessing whether a reasonable factfinder could conclude, based on the record, that Father met his clear and convincing evidentiary burden to sustain the termination of parental rights. *See Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982). We will uphold the court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52 ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)).

**¶10** To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground

under A.R.S. § 8–533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Ariz. R.P. Juv. Ct. 353(C); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). One such ground is abandonment, A.R.S. § 8–533(B)(1), which is defined as "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8–531(1). A parent's "[f]ailure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." *Id*.

**¶11**        A finding of abandonment requires the court to consider whether a parent has (1) provided reasonable support to the child, (2) maintained regular contact with him, and (3) provided normal supervision. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37 ¶ 18 (App. 2010). "The parent's conduct" determines abandonment, not a parent's "subjective intent." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 18 (2000). "The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity." *Id*. at 251 ¶ 25 (citation omitted). When a parent cannot exercise traditional methods to bond with the child, "he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id*. at 250 ¶ 22 (quoting *In re Pima Cnty. Juv. Sev. Action No. S-114487*, 179 Ariz. 86, 97 (1994)).

**¶12**        The record supports the juvenile court's decision to terminate Mother's parental rights on abandonment grounds. She failed to provide reasonable financial support for her son, being more than $9,000 in arrears on child support, and having contributed only $1,000 for his upbringing since 2019. Nor did she send him letters, gifts, or cards. She did not maintain reasonable contact with him; at the time Father petitioned for termination, Mother had gone nearly 17 months with no physical contact with C.W., and over six months without phone contact. As a result, she has been unable to provide normal supervision.

**¶13**        Mother argues that Father prevented her from having a normal parental relationship with C.W. by asking her not to call and by approving only visitation facilities that would not work for her situation. She relies on *Calvin B. v. Brittany B.*, in which this court reversed a termination order based on abandonment when one parent prevented the other from contact with the child. 232 Ariz. 292 (App. 2013). In contrast to the parents in *Calvin B.*, however, Mother here did not show that Father prevented her from having a normal parental relationship with C.W. because she did not actively seek more involvement with C.W. despite

Father's alleged interference. *See id.* at 297 ¶ 22 (noting father "continued to seek visits" and managed about 10 visits a year despite mother's persistent efforts preventing father from seeing son). Mother failed to show that she even attempted to call during the six months that led up to the petition's filing, let alone attempted to exercise her visitation rights. And while Father and Mother's relationship may have been contentious, the record does not support Mother's argument that Father's actions prevented her ability to parent. The juvenile court did not err in concluding that Father presented clear and convincing evidence of abandonment. Because we resolve Mother's appeal on this ground, we need not consider whether termination was warranted for chronic substance abuse. *See Michael J.*, 196 Ariz. at 251 ¶ 27.

¶14        Mother argues next that the juvenile court erred in finding that termination served C.W.'s best interests. Termination of parental rights is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). In determining whether the child will benefit from termination, relevant factors include whether the current placement is meeting the child's needs, an adoption plan is in place, and if the child is adoptable. *Demetrius L.*, 239 Ariz. at 3–4 ¶ 12. The juvenile court may find that continuing the parent-child relationship would be detrimental to the child's wellbeing if the child would linger in care with no prospect of reunifying with the parent. *See Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 571–72 ¶¶ 6, 10 (App. 2018). The juvenile court presumes that the interests of the parent and child have diverged once one of the statutory grounds for termination has been proved. *Alma S.*, 245 Ariz. at 150 ¶ 12. In determining whether the termination is in the child's best interests, the juvenile court must consider the totality of circumstances. *Id.* at 150 ¶ 13.

¶15        Reasonable evidence supports the juvenile court's best interests finding. C.W.'s placement with Father and his stepmother met his needs, and his stepmother wished to adopt him. Mother has been unable to provide stability for him and he asked Father to initiate termination proceedings.

¶16        Finally, Mother argues that her trial counsel was ineffective for failing to request a jury trial and deciding against using her proposed witnesses. This entitles Mother to no relief, however, because no constitutional or statutory provision entitles a parent to a jury trial in a termination proceeding. *See* A.R.S. § 8-537 (providing that "the court" shall determine termination petition); *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 93 ¶ 17 (App. 2005) ("Neither the Arizona constitution nor the

federal constitution requires a jury trial for severance proceedings."). Moreover, Arizona courts have not squarely addressed whether a juvenile court's order may be reversed for ineffective assistance of counsel, and if so, what standard applies. *See John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 323–24 ¶¶ 11–12 (App. 2007). When weighing the due process rights of a parent against the child's best interests, however, this court has held that reversal of a termination order is not justified by inadequacy of counsel unless, "at a minimum," a parent demonstrates that the alleged errors "undermine confidence in the outcome" of the termination proceeding, and shows a "reasonable probability that, but for the counsel's errors, the result would have been different." *Id.* at 325 ¶ 18 (adapting the ineffective assistance of counsel test from *Strickland v. Washington*, 466 U.S. 668 (1984) to Arizona termination of parental rights cases).

**¶17** Mother claims that her witnesses would have shed light on Father's past, but she does not show how the testimony would have led to a different result. Her allegations do not go to the statutory grounds of termination. Mother has failed to demonstrate that, but for her attorney's alleged errors, her parental rights would not have been terminated. We therefore need not determine whether Mother has established incompetence. *John M.*, 217 Ariz. at 325 ¶ 17. Thus, Mother's allegations of ineffective assistance of counsel do not justify reversal.

## CONCLUSION

**¶18** For the foregoing reasons, we affirm.

