IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

S.S., S.S., *Appellants*,

*v.*

STEPHANIE H., GARRETT S., COLORADO RIVER INDIAN TRIBES,
*Appellees*.

No. 1 CA-JV 16-0163
FILED 1-12-2017

Appeal from the Superior Court in La Paz County
No. S1500SV201200004
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Rideout Law, PLLC, Lake Havasu City
By Wendy Marcus
*Counsel for Appellants*

Jessica L. Quickle, Attorney at Law, Parker
By Jessica L. Quickle
*Counsel for Appellee Mother*

Office of the Attorney General, Colorado River Indian Tribes, Parker
By Elizabeth M. Lorina-Mills, LeeAnne Kane
*Counsel for Appellees Colorado River Indian Tribes*

## OPINION

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Jon W. Thompson and Judge John C. Gemmill joined.[1]

J O H N S E N, Judge:

¶1　　　　This appeal requires us to consider application of the Indian Child Welfare Act of 1978 ("ICWA") to a private severance proceeding brought by an Indian parent against a non-Indian parent on grounds of abandonment. For the reasons that follow, we affirm the superior court's denial of the requested severance.

### FACTS AND PROCEDURAL HISTORY

¶2　　　　Stephanie H. ("Mother") and Garrett S. ("Father") have two children, born in 2000 and 2002, respectively. Upon Mother and Father's divorce in 2005, the court awarded Mother "sole primary care, custody, and control" of the children and granted Father visitation.

¶3　　　　In February 2009, Mother and the children abruptly moved from Northern Arizona to a town south of Phoenix without the court's permission and without notice to Father. On Father's *ex parte* petition for relief, the court found the children were at risk of harm and awarded Father "temporary sole legal and physical custody." At the return hearing, Mother lied about the children's whereabouts. After the children were returned to Father a few days later, the court found Mother guilty of perjury and imposed a term of probation that required her to submit to drug testing and substance-abuse counseling.

¶4　　　　A few months later, the court awarded Father "continued sole legal and physical custody" of the children, contingent upon his submission to hair follicle drug testing. The court granted Mother supervised visitation, also contingent upon hair follicle drug testing. Father complied with the drug test requirement within a few weeks, but Mother did not. At a review hearing in August 2009, the court reaffirmed that Mother could

---

[1]　　　The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

have "no visitation and no contact by any means (phone, texting, and visiting schools) with the children until the drug testing [was] completed." After that order, Mother took and passed three hair follicle drug tests, one in 2010 and two in 2014. Between June 2011 and October 2013, as a requirement of her probation, Mother submitted to 72 random urinalyses, 69 of which were negative. In August 2011, she successfully completed a 12-step drug and alcohol recovery program.

¶5          Father filed a petition to sever Mother's parental rights in December 2012, alleging abandonment and neglect pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1), (2) (2017).[2] Various pretrial proceedings and several reassignments of judicial officers caused trial to be delayed until January 2016. In the meantime, Mother made multiple child-support payments between August 2012 and March 2014 and completed a parenting class. Mother also filed for visitation in 2013 and 2014. Father opposed Mother's petitions for visitation, which the court denied. By the time of trial, Mother had not seen the children since May 2009.

¶6          The Colorado River Indian Tribes intervened in the severance case and fully participated at trial. All parties acknowledged that the two children were Indian children under ICWA, 25 U.S.C. § 1903(4) (2012). Accordingly, before the court could sever Mother's parental rights, Father would need to prove that (1) active efforts were made to prevent the breakup of the Indian family, (2) those efforts were unsuccessful and (3) continued custody by Mother was likely to result in serious emotional or physical damage to the children. *See* 25 U.S.C. § 1912(d), (f) (2012).

¶7          At the close of Father's case, Mother moved to dismiss pursuant to Arizona Rule of Procedure for the Juvenile Court 66(F)(3). The court ruled Father had offered sufficient evidence to go forward on abandonment but not neglect. The court found sufficient evidence to show severance would be in the best interests of the children, *see* A.R.S. § 8-533(B), and, addressing one of the required ICWA elements, "at least some" evidence that continued custody by Mother was likely to result in serious emotional or physical damage to the children, *see* 25 U.S.C. § 1912(f). The court, however, granted Mother's motion to dismiss because it found Father had not offered sufficient evidence to prove unsuccessful "active efforts" to prevent breakup of the family. *See* 25 U.S.C. § 1912(d).

---

[2]          Absent material revision after the relevant date, we cite a statute's current version.

3

**¶8**        The children timely appealed the dismissal of the petition for severance.[3]  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and pursuant to A.R.S. §§ 8-235(A) (2017), 12-1201(A)(1) (2017) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### A.        Application of ICWA to a Private Severance of a Non-Indian's Parental Rights.

**¶9**        The children first argue ICWA does not apply to a private petition to sever and, in particular, does not apply to an Indian parent's petition to sever the parental rights of a non-Indian parent.  They contend ICWA is aimed at abusive child-welfare practices carried out by nontribal public and private agencies, *see Adoptive Couple v. Baby Girl*, 133 S. Ct. 2552, 2557 (2013), and argue the severance petition at issue here presents no such concern.[4]

**¶10**        Congress adopted ICWA, 25 U.S.C. §§ 1901-1963, after finding that "an alarmingly high percentage of Indian families [were] broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies."  *See* 25 U.S.C. § 1901(4) (2012); H.R. Rep. No. 95-1386, at 9 (1978) ("Surveys . . . indicate that approximately 25-35 percent of all Indian children are separated from their families.").  Accordingly,

---

[3]        Father has not appeared in this appeal.

[4]        "This court reviews *de novo* the interpretation and application of a statute." *Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, 156, ¶ 7 (App. 2000). "In interpreting a statute, we first look to the language of the statute itself." *Cross v. Elected Officials Ret. Plan*, 234 Ariz. 595, 603, ¶ 26 (App. 2014). "If the language is clear, the court must 'apply it without resorting to other methods of statutory interpretation.'" *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11 (2003) (quoting *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994)). "If the language is not clear, we consider other factors such as 'the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose.'" *Cross*, 234 Ariz. at 603, ¶ 26 (quoting *In re Estate of Jung*, 210 Ariz. 202, 204, ¶ 12 (App. 2005)). Unless otherwise stated, we assume the legislature "accords words their natural and obvious meaning," which often may be discerned from a dictionary definition. *State v. Jones*, 188 Ariz. 388, 392 (1997).

ICWA provides "minimum Federal standards for the removal of Indian children from their families." 25 U.S.C. § 1902 (2012).

¶11 The federal act applies to a "child custody proceeding," including a "termination of parental rights," involving an "Indian child." *See* 25 U.S.C. § 1903(1)(ii); *Maricopa County Juv. Action No. A-25525*, 136 Ariz. 528, 531 (App. 1983). An "Indian child" under ICWA is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).

¶12 As Mother and the Tribes argue, ICWA's plain language does not limit its scope to proceedings brought by state-licensed or public agencies. By its own terms, ICWA applies to *any* petition to terminate a parent's rights. 25 U.S.C. § 1903(1)(ii) ("'termination of parental rights' . . . shall mean any action resulting in the termination of the parent-child relationship"). "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). It follows that Congress did not intend that ICWA would apply only to termination proceedings commenced by state-licensed or public agencies. *See D.J. v. P.C.*, 36 P.3d 663, 673 (Alaska 2001) ("ICWA applies to termination proceedings when a party other than the state seeks the termination."); *In re N.B.*, 199 P.3d 16, 19 (Colo. App. 2007) ("ICWA's plain language is not limited to action by a social services department."); *In re D.A.C.*, 933 P.2d 993, 1000-01 (Utah App. 1997) (ICWA applies to any proceeding in juvenile court with permanent consequences to the parent-child relationship).

¶13 Further, Congress explicitly excluded dissolution and delinquency proceedings from its definition of "child custody proceeding." 25 U.S.C. § 1903(1). Had it also intended to exclude private termination proceedings, we presume it would have done so expressly. *See Hillman v. Maretta*, 133 S. Ct. 1943, 1953 (2013) ("[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980))). Accordingly, and in the absence of any authority to the contrary, we conclude that ICWA applies to a private termination proceeding just as it applies to a proceeding commenced by a state-licensed private agency or public agency.

¶14    The children also argue, however, that ICWA does not apply because termination of Mother's rights would not result in the breakup of an Indian family, given that they would remain in the custody of their Indian parent, Father.

¶15    Although Congress might have crafted ICWA to exclude petitions to sever the rights of non-Indian parents, no such exclusion appears in the statute, which, as we have said, expressly applies to "any action resulting in the termination of the parent-child relationship." 25 U.S.C. §§ 1903(1)(ii); *see* 25 U.S.C. § 1912(d), (f). Moreover, under the statute, "parent" means "any biological parent . . . of an Indian child." 25 U.S.C. § 1903(9). Given this and ICWA's definition of "termination of parental rights," *id.* § 1903(1)(ii), the plain language of the act reveals its focus is not on custody proceedings that affect Indian *parents*, but instead is on custody proceedings that affect Indian *children*. *See id.* § 1903(1)(ii). This conclusion is further supported by ICWA's stated purpose. *See id.* § 1902 ("The Congress hereby declares that it is the policy of this Nation to protect the best interests of the Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families."); *see In re Adoption of T.A.W.*, 383 P.3d 492, 500 (Wash. 2016) (application of ICWA depends on the status of the child).[5]

¶16    Accordingly, the superior court did not err by applying the requirements of ICWA to Father's petition to terminate Mother's parental rights.

**B.    "Active Efforts" When Severance Is Based on Abandonment.**

¶17    ICWA imposes certain procedural and substantive requirements in cases involving the termination of parental rights involving Indian children, but otherwise contemplates that termination proceedings in state courts will proceed according to state law. *Valerie M. v. Ariz. Dep't*

---

[5]    Rules recently issued by the Bureau of Indian Affairs ("BIA") addressing "requirements for State courts in ensuring implementation of ICWA in Indian child-welfare proceedings" are informative. Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38778-01, 38778 (June 14, 2016) (to be codified at 25 C.F.R. pt. 23). Under these rules, which took effect December 12, 2016, "Indian family," in the context of 25 U.S.C. 1912(d), "means the Indian child's family." *Id.* at 38798; *see also In re T.A.W.*, 383 P.3d at 500. Here, in addition to Father, this includes Mother, even though she is not a member of a tribe. *See Adoptive Couple*, 133 S. Ct. at 2562.

*of Econ. Sec.*, 219 Ariz. 331, 334-35, ¶¶ 14, 16 (2009) ("[Congress] recognized that federal requirements would be in addition to state law requirements, which will themselves prevail over federal law if they are more protective of parental rights."); *see also* 25 U.S.C. § 1921 (2012).

¶18        Among the additional federal protections ICWA imposes is that:

> [a]ny party seeking to effect . . . termination of parental rights to[] an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

25 U.S.C. § 1912(d); *see also In re T.A.W.*, 383 P.3d at 503 ("active efforts" requirement applies to private severance proceeding). The same requirement is imposed by Arizona Rule of Procedure for the Juvenile Court 66(C):

> [I]f the child is an Indian child, . . . [t]he moving party . . . must also satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts have proven unsuccessful.

Ariz. R.P. Juv. Ct. 66(C); *see also Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 421, ¶ 26 (App. 2011) ("[T]he necessary ICWA 'active efforts' finding must . . . be made under the clear and convincing evidence standard.").

¶19        Although the superior court in this case found Father offered sufficient evidence to go forward on his petition for severance based on abandonment, *see* A.R.S. § 8-533(B)(1), it dismissed the petition because it found he had offered insufficient evidence of unsuccessful "active efforts" to prevent the breakup of the family under 25 U.S.C. § 1912(d).

¶20        On appeal, the children argue the court erred by requiring Father to prove "active efforts" had been made to prevent abandonment. They offer no authority, however, for their contention that the "active efforts" mandate does not apply to a termination proceeding brought on the ground of abandonment. To the contrary, the statute allows no exception to the required proof of unsuccessful "active efforts" whenever "[a]ny party

seek[s] . . . termination of parental rights to an Indian child under state law." 25 U.S.C. § 1912(d).

¶21        ICWA does not define "active efforts . . . to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family." Nor does it specify who must make the required "active efforts." Rather, the statute only requires proof that active efforts have been made to preserve the parent-child relationship and those efforts have proved unsuccessful. *See In re Pima County Juv. Action No. S-903*, 130 Ariz. 202, 208 (App. 1981); *In re Crystal K.*, 276 Cal. Rptr. 619, 626 (Cal. App. 1990) ("[R]emedial efforts must be directed at remedying the basis for the parental termination proceeding."); Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10146-02, 10156 (Feb. 25, 2015). What constitutes "active efforts" will vary, depending on the circumstances, the asserted grounds for severance and available resources. 25 U.S.C. § 1912(d); s*ee In re Baby Boy Doe*, 902 P.2d 477, 484 (Idaho 1995); *In re C.A.V.*, 787 N.W.2d 96, 103-04 (Iowa App. 2010) ("The 'active efforts' requirement must be construed in the context of the existing circumstances.").[6]

¶22        The children argue there are no services that can prevent a parent from abandoning a child. *Cf.* A.R.S. § 8-533(B)(8) (petition to sever parental rights based on out-of-home placement requires proof "that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services"). But "active efforts," particularly in the context of abandonment, will not always implicate formal public services. Under Arizona law, a parent abandons a child by failing "to provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1).

---

[6]        In its new rules, the BIA "recognizes that what constitutes sufficient 'active efforts' will vary from case-to-case, and the definition . . . retains State court discretion to consider the facts and circumstances of the particular case before it." Indian Child Welfare Act Proceedings, 81 Fed. Reg. at 38791. The financial and practical resources available to a party seeking termination are among the circumstances that bear on what "active efforts" might be required under ICWA. *See In re C.A.V.*, 787 N.W.2d at 103; *In re T.A.W.*, 383 P.3d at 509 (Madsen, C.J., dissenting in part) ("[M]other did all that she could do to facilitate the father's relationship with the Indian child; those efforts did not include the provision of agency or institutional resources and services that she did not have access to or which were otherwise unavailable.").

Construing ICWA broadly to promote its stated purpose, we interpret the "active efforts" requirement of § 1912(d) in an abandonment proceeding to include informal private initiatives aimed at promoting contact by a parent with the child and encouraging that parent to embrace his or her responsibility to support and supervise the child. *See In re C.A.V.*, 787 N.W.2d at 103 (mother met "active efforts" requirement by "facilitating visits before [father's] incarceration and by inviting continued contact during his prison stay").

¶23 In the abstract, "active efforts" to prevent a parent from abandoning a child might include, *inter alia*, informing the parent about the child's educational progress and interests; sending the parent photographs of the child; keeping the parent informed of irregular but significant expenses, such as medical expenses, to which the parent would be expected to contribute; and, where appropriate, inviting the parent to school and extracurricular events and allowing the child to accept communications from the parent. *See, e.g.*, *In re N.B.*, 199 P.3d at 25 ("[D]espite its finding of abandonment, the trial court also found that stepmother could have engaged in active efforts to provide remedial services and rehabilitative programs by informing the child of the identity of his biological mother and seeking to preserve the relationship between them by showing the child pictures of her.").

¶24 While arguing Mother abandoned the children by failing to contact, support and supervise them, Father offered no evidence at trial that anyone shared any information about the children with Mother or invited or encouraged her to contact, support or supervise the children. To the contrary, from 2009 on, Father obtained a series of protective orders that forbade her from any contact with the children; he testified he objected to all of Mother's efforts to regain visitation rights out of concern for her drug history and because he did not want to give her another chance to abscond with the children. *Cf. Calvin B. v. Brittany B.*, 232 Ariz. 292, 297, ¶ 21 (App. 2013) ("A parent may not restrict the other parent from interacting with their child and then petition to terminate the latter's rights for abandonment.").

¶25 At trial, Father's evidence of "active efforts" focused instead on the 2009 order in the dissolution proceeding that required Mother to undergo hair follicle drug testing before she could enjoy visitation with the children. Father argued Mother effectively abandoned the children by failing to comply with the drug test requirement. On appeal, the children contend that "active efforts" did not require Father to shoulder the burden

or expense of ensuring Mother complied with the drug testing order so as to be able to visit the children.

**¶26**      We need not decide whether the "active efforts" requirement of ICWA, 25 U.S.C. § 1912(d), required Father to try to ensure that Mother complied with the court's order to drug test because the record undercuts the premise of Father's contention at trial and the children's argument on appeal.  The evidence showed that although Mother at first put off obtaining a hair follicle test, she underwent one such test in 2010 and two others in 2014.  In addition, as part of her probation requirements, she submitted to 72 random drug tests between June 2011 and October 2013 and successfully completed a 12-step drug and alcohol recovery program.  The superior court dismissed Father's petition before hearing Mother put on evidence why she was unable to regain visitation rights, notwithstanding her eventual compliance with the drug testing ordered in the dissolution.  Nevertheless, on this record, the evidence was sufficient to support the superior court's finding that any "active efforts" to encourage Mother to address her drug issues had been successful, not unsuccessful, as ICWA requires.[7]

## C.    Equal Protection Challenge.

**¶27**      Without citation to authority, the children finally argue that application of ICWA to Father's petition violates their constitutional rights to equal protection, based on their "race and tribal affiliation."  We join the several other courts that have concluded that the additional requirements ICWA imposes on severance of a parent's rights to an Indian child are based not on race, but on Indians' political status and tribal sovereignty, and that those requirements are rationally related to the federal government's desire to protect the integrity of Indian families and tribes.  *See, e.g.*, *In re N.B.*, 199 P.3d at 22-23 (citing cases).

---

[7]      Father testified he attempted to pay for a hair follicle test for Mother, but the court held that this alone, if true, was not an "active effort" in the absence of evidence that he let Mother know she would not have to pay for the test.  Given the record shows that Mother eventually completed a successful drug-testing regime, we need not decide whether ICWA requires proof in a private severance proceeding of failed active efforts by the *petitioner* aimed at preventing severance.  *See* 25 U.S.C. § 1912(d) (petitioner "shall satisfy the court that active efforts have been made . . . to prevent the breakup of the Indian family and that these efforts have proved unsuccessful").

**CONCLUSION**

¶28     For the reasons set forth above, we affirm the superior court's dismissal of Father's petition for failure to comply with the requirement in 25 U.S.C. § 1912(d) to show proof of unsuccessful "active efforts" to prevent the breakup of the family.



AMY M. WOOD • Clerk of the Court
FILED:   AA