NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CARLOS R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.R., L.R., *Appellees*.

No. 1 CA-JV 16-0372
FILED 3-16-2017

---

Appeal from the Superior Court in Maricopa County
No. JD23651
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Tucson
By Dawn Rachelle Williams
*Counsel for Appellee*


Denise L. Carroll, Scottsdale
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

---

**B E E N E**, Judge:

¶1        Carlos R. ("Father") appeals the termination of his parental rights to his children, M.R. and L.R. ("Children").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Several months after the Children were born, Father kidnapped and assaulted Mother.  Police attempted to arrest Father, but he fled to New Mexico.  The Department of Child Safety ("DCS") filed a dependency petition, and placed the Children with their maternal grandparents.  Father was eventually apprehended in New Mexico and extradited to Arizona, where he pleaded guilty to kidnapping and aggravated assault, and was sentenced to 10.5 years in prison.  After the Children were found dependent, DCS moved for termination of Father's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(1) (2017), abandonment, and 8-533(B)(4), length of felony incarceration.[1]

¶3        During the first day of the termination hearing, Father appeared telephonically from the Maricopa County Jail.[2]  At the hearing, Father called a witness from the Navajo Nation to testify that DCS did not comply with the Indian Child Welfare Act ("ICWA").[3] Specifically, Father's witness testified that DCS failed to make active efforts to prevent the

---

[1]        Absent material revisions after the relevant date, we cite a statute's current version.

[2]        The superior court issued an order for Father to be transported from the Department of Corrections; however, Father was not transported from jail to court.

[3]        Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901-1963 (1978).

breakup of the Indian family and that DCS should have assisted Father with obtaining services while in prison. The superior court set an additional hearing to determine whether DCS complied with ICWA. The superior court ordered Father to appear telephonically for the hearing.

**¶4** At the subsequent hearing, Father did not appear telephonically from prison, but was represented by counsel, who participated fully in the proceeding. DCS presented an ICWA expert who testified that DCS made active efforts to prevent the breakup of the Indian family.

**¶5** The superior court determined that DCS complied with ICWA and terminated Father's parental rights based on abandonment and length of felony incarceration.[4] Father timely appealed the termination of his parental rights. We have jurisdiction pursuant to A.R.S. §§ 12-120.21 (2017), 12-2101 (2017) and 8-235 (2017).

## DISCUSSION

**¶6** Custody of one's children is a fundamental, but not absolute, right. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent's rights upon clear and convincing evidence of one of the statutory grounds in A.R.S. § 8-533(B), and upon finding by a preponderance of the evidence that termination is in the best interests of the child. *Id.* at 248-49, ¶ 12.

**¶7** Father does not challenge the superior court's determination that adequate statutory grounds for termination existed or termination was in the Children's best interests. Because the Children are Indian children, the proceedings are subject to ICWA. In addition to the state grounds for termination, ICWA requires that any party seeking termination of the Indian parents' parental rights produce clear and convincing evidence of unsuccessful active efforts at "remedial services and rehabilitative programs designed to prevent the breakup of the Indian family." 25 U.S.C. § 1912(d) (2012); *Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 421, ¶ 26 (App. 2011) ("[T]he necessary ICWA 'active efforts' finding must . . . be made under the clear and convincing evidence standard."). ICWA neither defines active efforts, nor specifies who must make active efforts, only that such efforts were unsuccessfully made. *See S.S. v. Stephanie H.*, 241 Ariz. 419, 425, ¶ 21 (App. 2017). Further, the party seeking termination must

---

4       The parental rights of the Mother were also terminated, but are not subject to this appeal.

prove beyond a reasonable doubt that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f); *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334-35, ¶¶ 11, 14 (2009).

¶8 Father contends that the superior court erred in finding that DCS made active efforts to prevent the breakup of his family. "[W]hether 'active efforts' were made and were unsuccessful requires both factual findings by the court about the nature and extent of the services provided and a legal conclusion about their adequacy." *Yvonne L.*, 227 Ariz. at 422, ¶ 28. "[N]either ICWA nor Arizona law mandates that [DCS] provide every imaginable service or program designed to prevent the breakup of the Indian family before the court may find that 'active efforts' took place." *Id.* at 423, ¶ 34. "What constitutes 'active efforts' will vary, depending on the circumstances, the asserted grounds for severance and available resources." *Stephanie H.*, 241 Ariz. at 425, ¶ 21. We will not reweigh the evidence, and "look only to determine whether there was substantial evidence to sustain the court's finding." *Yvonne L.*, 227 Ariz. at 422, ¶ 27 (internal quotations omitted).

¶9 Here, the superior court found that Father's incarceration for kidnapping and assaulting the Children's Mother limited DCS's ability to provide reunification services to Father. But even so, DCS encouraged Father to participate in services available to him through the prison, provided Father with updates regarding the Children and facilitated contact between Father and the Children through letters and telephone calls to relatives. Under the circumstances, although DCS's reunification efforts were limited with respect to Father, DCS still made active efforts to provide reunification services to the parents to prevent the breakup of their family. *See People in Interest of S.H.E.*, 824 N.W.2d 420, 427 (S.D. 2012) (in determining whether "active efforts" were made regarding an incarcerated parent, the court may consider efforts made to support the non-incarcerated parent, because such efforts are aimed at preserving the Indian family and there are limited rehabilitative options for incarcerated parents). Additionally, the superior court determined that DCS offered Mother, who was not incarcerated, numerous services designed to assist her in parenting the Children, but she failed to engage in those services. Accordingly, we conclude that substantial evidence supports the superior court's determination that DCS complied with ICWA's "active efforts" requirement.

¶10 Next, Father asserts that the superior court erred in making the active efforts finding based on testimony presented by a DCS employee.

At the hearing, Father's witness testified that DCS had not provided active efforts to prevent the breakup of the family. Conversely, DCS's ICWA expert stated that active efforts had been made with respect to the parents. A superior court has a "duty to independently assess evidence" presented at a hearing. *Leslie C. v. Maricopa Cty. Juv. Ct.*, 193 Ariz. 134, 135 (App. 1997). And when evidence is conflicting, the trial court may make a finding provided there is substantial evidence to support it. *Imperial Litho/Graphics v. M.J. Enters.*, 152 Ariz. 68, 77 (App. 1986). Because substantial evidence supports the active efforts testimony provided by DCS, the superior court did not err in its finding.

¶11 Lastly, Father argues that his due process rights were violated when the superior court proceeded with the termination hearing while he was not present in the courtroom. We review constitutional questions *de novo*. *Emmett McLoughlin Realty, Inc. v. Pima Cty.*, 212 Ariz. 351, 355, ¶ 16 (App. 2006).

¶12 "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "In termination proceedings, due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 92, ¶ 16 (App. 2005) (quotations and citation omitted).

¶13 Father's due process rights were not violated by his telephonic appearance during the first day of proceedings. Prior to the hearing, the superior court allowed Father the opportunity to consult with his attorney, and after their consultation, Father's counsel announced that he was prepared to proceed. "[A] telephonic appearance is an acceptable alternative to personal appearance when personal appearance is prevented by incarceration." *John C. v. Sargeant*, 208 Ariz. 44, 48, ¶ 17 (App. 2004). Similarly, Father's absence from the second day of the hearing did not result in a deprivation of rights. The superior court issued an order allowing Father to appear by telephone; however, Father did not avail himself of the opportunity to appear and no evidence was proffered to excuse his absence. Despite Father's inability to be physically present in the courtroom during the hearing, his interests were represented by his counsel, who actively participated in the proceeding on his behalf. "[W]here the parent fails to appear but is still represented by counsel, the court may proceed in that parent's absence because his or her rights will be protected by the presence and participation of counsel." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz.

299, 307, ¶ 25 (App. 2007); *see also Monica C.*, 211 Ariz. at 95, ¶ 26. Accordingly, the superior court did not err by proceeding with the termination hearing in Father's absence.

## CONCLUSION

**¶14** For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA