NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JANICE H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, SAN CARLOS APACHE TRIBE,
V.S., J.S., J.H., *Appellees*.

No. 1 CA-JV 17-0343
FILED 2-15-2018

Appeal from the Superior Court in Maricopa County
No. JD20470
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Peter B. Swann and Judge James P. Beene joined.

_____

**T H O M P S O N**, Judge:

¶1        Janice H. (Mother) appeals the juvenile court's order terminating her parental rights to her children V.S., J.S., and J.H. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        The Department of Child Safety (DCS) first became involved with Mother regarding the children in December 2015, when DCS took her children into temporary physical custody after receiving a report indicating Mother abused her prescription medications and that she failed to enroll two of her four children in school that year.[1]  Later that month, DCS filed a petition for dependency alleging neglect, memory loss, cognitive delay, domestic violence, and substance abuse, possibly prescription medication.

¶3        Mother is a member of the San Carlos Apache Tribe (Tribe). The Tribe filed a motion to intervene under the Indian Child Welfare Act (ICWA) 25 United States Code (U.S.C.) §§ 1901-1963 (2012), which the juvenile court granted, and, in due course, DCS provided notice to the Tribe, as required.

¶4        In March 2016, Mother denied the allegations contained in the petition but submitted the issue of dependency to the juvenile court for determination.  The court adjudicated the children dependent and ordered a case plan of family reunification.  DCS offered Mother reunification services which included supervised visitation, random drug testing, substance abuse assessment and treatment with Terros, parent aide services, a psychological evaluation, and referral for individual counseling.

¶5        The juvenile court added a concurrent case plan of severance and adoption or permanent guardianship for the children in December 2016

_____

[1] DCS took the children's older brother, B.E., into custody at the same time, but DCS dismissed him from the petition on his eighteenth birthday and he is not a party to this appeal.

due to Mother's failure to engage in the services offered. DCS referred Mother to Terros for substance abuse counseling three times, but each referral was closed out unsuccessfully. Thereafter, DCS advised Mother to self-refer to Native American Connections (NAC), and she underwent an assessment in January 2017. Mother admitted to using drugs, including methamphetamine, oxycodone, and morphine. The NAC caseworker diagnosed Mother with an opioid dependence and opined that she was likely substituting prescription drugs for methamphetamine use.

**¶6**      Due to Mother's lack of progress, DCS filed a motion for termination of her parental rights under Arizona Revised Statutes (A.R.S.) sections 8–533(B)(3) (2014) (chronic substance abuse) and –533(B)(8)(c) (fifteen months' time in care). Following a two-day contested hearing held on May 23 and June 14, 2017, the juvenile court terminated Mother's parental rights. Mother timely appealed. We have jurisdiction pursuant to A.R.S. § 8–235(A) (2014) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶7**      To support an order for termination of parental rights, the juvenile court must find that one or more of the statutory grounds for termination were proven by clear and convincing evidence. A.R.S. § 8–537(B) (2014); *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). In addition, the court must find by a preponderance of the evidence that termination is in the best interests of the child. *Mario G. v. Ariz. Dep't. of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 11 (App. 2011) (citing *Michael J.*, 196 Ariz. at 249, ¶ 12); *see also* A.R.S. § 8–533(B).

**¶8**      As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we accept the court's findings of fact "unless no reasonable evidence supports those findings." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997). We view the evidence in the light most favorable to sustaining the juvenile court's ruling. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13 (App. 2005).

**¶9**      Mother argues the court erred when it denied her more time to remedy her substance abuse issues and the circumstances that caused her children to be in out-of-home placement. She further claims DCS did not

prove by clear and convincing evidence she was unable to remedy those circumstances.

## A. Statutory grounds for severance

¶10 Under § 8–533(B)(3), the juvenile court may terminate parental rights to a child if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." Chronic substance abuse persists over a long period, but is not necessarily constant. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). Generally, a parent's "temporary abstinence from drugs and alcohol does not outweigh a significant history of abuse or consistent inability to abstain during [the] case." *Id.* at 379, ¶ 29. The children's interests in permanency must prevail over a parent's uncertain battle with drugs. *Id.*

¶11 "As the trier of fact, the juvenile court could properly consider the evidence of Mother's prior substance abuse in evaluating whether reasonable grounds existed to conclude her inability to discharge parental responsibilities would continue for a prolonged and indeterminate period." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2016). That evidence may include "the length and frequency of Mother's substance abuse, the types of substances abused, . . . prior efforts to maintain sobriety, and prior relapses." *Id.*

¶12 Mother has a long history of substance abuse which include methamphetamine, oxycodone, and other prescription medications. At the outset of the case, Mother submitted to a hair-follicle test which was positive for methamphetamine and morphine and days later, her urinalysis sample tested positive for oxycodone and morphine. Throughout the pendency of the case, Mother did not regularly comply with random drug testing and frequently tested positive for opiates and sometimes barbiturates.

¶13 At the severance hearing, Mother acknowledged her history of substance abuse and attributed her use of oxycodone to an orbital fracture she sustained approximately seven years ago, pain resulting from back surgery in April 2016, and a Methicillin-resistant Staphylococcus aureus (MRSA) infection in May 2017. Although Mother denied abusing prescription medication, the NAC intake assessor noted her admission to feeling "preoccupied with buying and using meth" and "regular use and

abuse" of morphine and to "using more oxycodone than she means to use, about five a day."

**¶14**        Mother failed to complete substance abuse treatment despite three referrals to Terros.  She eventually attended a substance abuse program through NAC where she received intensive outpatient therapy from January to April 2017, but she missed many sessions.  After four months of sporadic engagement, Mother made no progress and was still in the contemplation stage of change.

**¶15**        Mother was still using oxycodone and testified that she filled three prescriptions for oxycodone at three different pharmacies in April 2017.  She further admitted that between December 2016 and April 2017, she received seven prescriptions for oxycodone from seven different physicians.  Mother denied knowledge of DCS's requirement that she stop using prescription medications, but the record contradicts this claim.  Mother disclosed to NAC that she was "told by DCS to stop using them so that she can get her children back."  Further, Mother's claim that she wished she had known of DCS's expectation because she "would have done it" appears disingenuous because in the days between the two hearings, Mother tested positive for opiates three times.  Despite her scheduled graduation from the NAC outpatient program in late June 2017, the case manager recommended Mother undergo in-patient residential treatment and detoxification.

**¶16**        Although Mother did stop using methamphetamines, she made no effort to gain control over her oxycodone abuse. Mother's justification of her opiate usage as medically necessary to deal with pain does not outweigh her significant history of abuse or her inability to abstain during this protracted dependency proceeding. *See Raymond F.*, 224 Ariz. at 379, ¶ 29 ("[A parent]'s failure to remedy his drug abuse; despite knowing the loss of his children was imminent, is evidence he has not overcome his dependence on drugs.").  Mother's reasoning did not persuade the juvenile court which found that "Mother is still struggling with her addiction issues despite ongoing treatment services at NAC."   Reasonable evidence supports the juvenile court's findings that Mother is unable to discharge her parental responsibilities due to chronic substance abuse and her condition will continue for a prolonged indeterminate period.

**¶17**        Because we conclude the record supports termination for chronic substance abuse, we need not address the out-of-home placement grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (explaining that if sufficient evidence supports any of the statutory

grounds on which the court ordered severance, it is unnecessary to address arguments relating to the other grounds).

**B. Active Efforts**

**¶18**         Because Mother's children are Indian, the proceedings are subject to ICWA. In addition to the stated grounds for termination, ICWA requires that any party seeking termination of the Indian parent's parental rights produce clear and convincing evidence of unsuccessful active efforts at "remedial services and rehabilitative programs designed to prevent the breakup of the Indian family." 25 U.S.C. § 1912(d) (2012); *Yvonne L. v. Ariz. Dep' t of Econ. Sec.*, 227 Ariz. 415, 421, ¶ 26 (App. 2011) ("[T]he necessary ICWA 'active efforts' finding must . . . be made under the clear and convincing evidence standard."). ICWA neither defines active efforts nor specifies who must make active efforts, only that such efforts were unsuccessfully made. *See S.S. v. Stephanie H.*, 241 Ariz. 419, 425, ¶ 21 (App. 2017). Further, the party seeking termination must prove beyond a reasonable doubt that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f); *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334–35, ¶¶ 11, 14 (2009).

**¶19**         DCS presented an ICWA expert who opined that DCS made active efforts to prevent the breakup of the Indian family by providing Mother with substance abuse treatment and she concluded that "placing the children back with mom would put them at risk for emotional and physical harm."    "[W]hether 'active efforts' were made and were unsuccessful requires both factual findings by the court about the nature and extent of the services provided and a legal conclusion about their adequacy." *Yvonne L.*, 227 Ariz. at 422, ¶ 28. "[N]either ICWA nor Arizona law mandates that [DCS] provide every imaginable service or program designed to prevent the breakup of the Indian family before the court may find that 'active efforts' took place." *Id.* at 423, ¶ 34. "What constitutes 'active efforts' will vary, depending on the circumstances, the asserted grounds for severance and available resources." *Stephanie H.*, 241 Ariz. at 425, ¶ 21. We will not reweigh the evidence, and "look only to determine whether there was substantial evidence to sustain the court's findings." *Yvonne L.*, 227 Ariz. at 422, ¶ 27 (internal quotations omitted).

**¶20**         Here, the juvenile court considered the numerous services offered by DCS and expressly found that DCS made "active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and these efforts have proven

unsuccessful" and made "reasonable efforts to provide Mother with rehabilitative services". The evidence shows that Mother's lack of participation in the offered services prevented her from gaining the skills necessary to appropriately parent her children. Because substantial evidence supports the active efforts and continued harm testimony provided by the ICWA expert, the juvenile court did not err in its finding.

## C. Best Interests

**¶21** Severance is in a child's best interests if he or she would benefit from severance or be harmed by continuation of the parent-child relationship. *Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990). Relevant factors include whether the child's existing placement is meeting the child's needs, whether the child is adoptable, and whether an adoptive placement is immediately available. *Raymond F.* at 383, ¶ 30. The evidence established that the children are adoptable and need stability.

**¶22** The juvenile court, in its order, expressly found that "denial of termination of parental rights at this time to give [M]other more time to become sober is detrimental to best interests and needs for permanency for the children." At the hearing, the Tribe's witness opined that DCS should allow Mother more time to comply but also stated he was unsure if more time would risk more damage and harm to the children. The ICWA expert stated that continued custody with Mother would likely result in serious physical and emotional harm to the children. A juvenile court has a "duty to independently assess evidence" presented at a hearing. *Leslie C. v. Maricopa Cty. Juv. Ct.*, 193 Ariz. 134, 135 (App. 1997). And when evidence is conflicting, the court may make a finding provided there is substantial evidence to support it. *Imperial Litho/Graphics v. M.J. Enters.*, 152 Ariz. 68, 77 (App. 1986). The DCS case manager testified the children are adoptable, that V.S. and J.S. are in an adoptive home that is ICWA compliant, and there is good cause to deviate from the placement preferences under ICWA for J.H. because he is placed with B.E., his older sibling.

**¶23** Finally, although the record is clear that Mother has a bond with her children, the existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests. *Bennigno R. v. Arizona Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013). Even in the face of such a bond, the juvenile court is required to evaluate the totality of circumstances and determine whether severance is in the best interests of the children. *Id.* at 351–52, ¶ 31. Here, the court did consider the totality of the circumstances and reasonable evidence in the record supports the court's best interests

finding. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99 (App. 2016).

## CONCLUSION

¶24 For the foregoing reasons, we affirm.

