NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

————————————————

IN RE TERMINATION OF PARENTAL RIGHTS AS TO U.C. and A.C.

No. 1 CA-JV 23-0112
FILED 10-31-2023

————————————————

Appeal from the Superior Court in Yavapai County
No. P1300SV202200041
The Honorable Anna C. Young, Judge

**AFFIRMED**

————————————————

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant Mother*

Mull & Brown, PLLC, Prescott
By John G. Mull
*Counsel for Appellee Father*

————————————————

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which
Presiding Judge D. Steven Williams and Judge Paul J. McMurdie joined.

————————————————

**T H U M M A**, Judge:

¶1        Erin C. (Mother) appeals from an order terminating her parental rights to U.C. and A.C. based on abandonment. Because Mother has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Ronin C. (Father) and Mother are the biological parents of U.C., born in 2008, and A.C., born in 2009. Parents were married but divorced in 2013. Over the years, Mother has had behavioral health issues that, at times, have been untreated.

¶3        Mother was the children's primary caregiver until 2014, when Child Protective Services placed the children in Father's care to "protect the children from [M]other's unpredictable and violent behavior." As provided by the safety plan, Mother's contact with the children was limited to phone calls initiated by Father. Father soon stopped making the phone calls, concluding they were "not productive."

¶4        In 2016, after Mother made numerous unsubstantiated welfare check requests to law enforcement about the children, Father obtained a protective order against Mother, which included the children as protected parties. In September 2017, the order of protection against Mother expired. Following the order's expiration, Mother did not seek to enforce her parenting time until June 2022. The record shows "Mother contacted the [c]hildren approximately five times between 2017 and 2022 via letter," in addition to a few texts to Father. Mother has not seen the children since 2014.

¶5        In October 2022, Father filed a petition to terminate Mother's parental rights, alleging abandonment. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(2) (2023).[1] After an April 2023 adjudication, the court granted the petition, finding Father had proven abandonment and that termination was in the children's best interests. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. § 8-235(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 601-03.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

**¶6** As applicable here, Father was required to prove abandonment by clear and convincing evidence and also prove by a preponderance of the evidence that termination was in the best interests of the children. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

## I. The Court Did Not Abuse Its Discretion in Finding Abandonment.

**¶7** Abandonment occurs when a parent fails to "provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). Behavior reaching the level of "reasonable support," "regular contact" and "normal supervision" varies according to differences in underlying circumstances. *See, e.g.*, *S.S. v. Stephanie H.*, 241 Ariz. 419, 425 ¶ 21 (App. 2017). Nevertheless, a parent must act persistently to pursue the parent-child relationship despite obstacles that may arise. *Michael J.*, 196 Ariz. at 250 ¶ 22. Failure to maintain a normal parent-child relationship without just cause for six months is prima facie evidence of abandonment, creating a rebuttable presumption of abandonment. A.R.S. § 8-531(1).

**¶8** Mother argues she has shown just cause for failing to maintain a parent-child relationship, pointing to the order of protection Father obtained against her and that she "had been criminally prosecuted for contacting Father in violation of the orders of protection." But Mother was not arrested for violating the order of protection after 2017, when it expired. Mother took no action to see the children after that time and contacted them in writing an average of once a year from 2017 to 2022. Moreover, Mother candidly admits "she did not take action in the courts regarding her Children from 2017 to 2022**."** Given these facts, Mother did not "vigorously assert [her] legal rights" to parent her children. *See Michael J.*, 196 Ariz. at 250 ¶ 22.

**¶9** Citing *Calvin B. v Brittany B.*, 232 Ariz. 292 (App. 2013), Mother argues that she "was unable to have contact with the Children due to the multiple court orders and Father's intentional violation of the Court order for phone calls." Mother further contends she cannot have abandoned her children when Father restricted her access to them. It appears that Father failed to facilitate phone calls between Mother and the children. Mother, however, did not seek to enforce her parental rights, nor did she contact the children (other than a few sporadic cards and texts) for five years *after* the protective order had expired. By contrast, the parent in *Calvin* "managed as many as ten visits with his son a year" despite the obstacles he faced, including orders of protection. *See id.* at 297-98 ¶¶ 25, 27.

**¶10** Ultimately, the superior court found that "[t]he children have had no relationship with Mother since 2014 and are now teenagers. Mother has failed to provide reasonable support or maintain regular contact with the children, including providing normal supervision for a period of over eight years." The record supports this finding, and Mother has shown no error in the abandonment finding.

**II. The Court Did Not Abuse Its Discretion in Finding Termination Was in the Children's Best Interests.**

**¶11** "Termination is in the child's best interest if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018) (citation omitted). The court considers the totality of the circumstances when making this determination. *Id.* at 148 ¶ 1.

**¶12** Mother argues the court erred in finding best interests because Father "did not present any evidence that the Children had another mother-figure, that he was in a committed relationship with someone who wished to adopt the Children, or that there was any future plan for adoption." While the potential for adoption may support a best interests finding, it is not required. *See, e.g., Mary Lou C. v. Arizona Dept. of Econ. Sec.*, 207 Ariz. 43, 50 ¶ 19 (App. 2004). The court may find, on the evidence presented, that best interests are shown when granting termination would benefit the children somehow, or that denying termination would harm the children. *Id.* (citation omitted). When assessing best interests, "[o]f foremost concern . . . is 'protecting a child's interest in stability and security.'" *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016) (citation omitted).

**¶13** As applied, the trial evidence -- including testimony and a social study received in evidence -- supports the court's finding that termination would provide the children with needed stability. Though noting a recent brief period of stability, the social study reports that Mother has a history of "DCS and criminal issues that kept her from being a safe and stable parent for her children." The court also found that, should termination be denied, the children would be harmed by the "uncertainty and fear associated with being exposed to Mother's mental health issues and erratic behavior."

**¶14** Reasonable evidence supports the court's finding that termination was in the children's best interests. Accordingly, Mother has not shown the court erred in its best interests finding.

## CONCLUSION

**¶15** The order terminating Mother's parental rights to U.C. and A.C. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA