NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

THOMAS M., *Appellant,*

*v.*

DANETTE G., G.M., *Appellees.*

No. 1 CA-JV 18-0065
FILED 8-14-2018

Appeal from the Superior Court in Maricopa County
No. JS17385
The Honorable Eartha K. Washington, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

McCulloch Law Offices, Tempe
By Diana McCulloch
*Counsel for Appellee Danette G.*

.

_____

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

_____

**W I N T H R O P**, Judge:

¶1 Thomas M. ("Father") appeals the superior court's order severing his parental rights to his daughter, G.M., on the abandonment ground. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 Father and Danette G. ("Mother") have two minor daughters, A.M., born in 2001, and G.M., born in 2003. After a seven-year marriage, the parents went through a two-year contentious divorce, resulting in a final decree in May 2009. The decree allotted the parents equal parenting time. Even after the decree, things remained acrimonious between them, and several family court proceedings followed over the next eight years. The family court appointed parenting coordinators, as necessary, to attempt to mediate parenting disputes as they arose.

¶3 In 2013, G.M. developed anxiety related to her visits with Father and exhibited stomach aches and vomiting on exchange days. G.M.'s pediatrician concluded that her physical symptoms were caused by anxiety, and referred her for immediate therapy. Her therapists diagnosed her with anxiety and depression, and eventually with post-traumatic stress disorder ("PTSD"). Despite regularly attending therapy, G.M.'s issues escalated in mid-2015 when she threatened to harm herself or commit suicide from the anxiety over having to see Father.

¶4 Consequently, in September 2015, the superior court decreased Father's parenting time to every other weekend and ordered that, if G.M. "expresses at any point that [she] will self-harm during Father's parenting time, Father's parenting time will not occur that weekend and it will be brought to the Parenting Coordinator's attention." G.M. attended a few more visits with Father but stopped visiting altogether after November 2015. When G.M. texted Father that December to inform him that she was not going to visit, Father replied that she was not welcome in his house. After that, Father did not raise any visitation issues with the parenting coordinator. Father sent G.M. a handful of texts between December 2015

and March 2016, but she did not respond. In July 2016, Father sent G.M. one text message informing her that the family dog had died. In September, Father moved to Texas, and in November, Father sent G.M. a text message about Christmas. G.M. did not communicate with Father after his move, but kept in some contact with his wife, who would text G.M. and occasionally send gifts.

¶5        Meanwhile, Mother obtained several enforcement orders against Father because he fell severely behind in paying both child support and his share of G.M.'s medical expenses. By October 2016, the superior court found Father in willful contempt of child support orders at least ten times, and he owed more than $100,000 in child support, arrearages, and expenses. That same month, Mother petitioned to terminate Father's parental rights to G.M., alleging abandonment.[1] With the court's permission, Father attended most of the pretrial proceedings telephonically. At a pretrial conference in August 2017, however, the superior court ordered Father to appear in person for the severance hearing scheduled over four days in November and December.

¶6        Father did not submit a written motion for a telephonic appearance, but called the court on the first day of the severance hearing. He explained that he was not going to appear in person because he had an active arrest warrant in Arizona for failing to pay child support and did not want an arrest jeopardizing his employment in Texas. After questioning Father and his counsel about his failure to appear, the superior court told Father there was "no just cause" for his absence and proceeded with the hearing. The court allowed Father to listen to the remainder of the hearing via telephone. On the second day of the hearing, the superior court stated on the record that:

> [W]e're going to start with the issue about the default, because that was addressed the last time. . . . When I decided [Father] was in default for failing to appear in person, I found that he . . . failed to appear without good cause. . . . By failing to do so, he waived his rights and is in default pursuant to [Arizona Revised Statutes ("A.R.S.") section] 8-537. His legal rights are, therefore, waived. And he is deemed to have admitted the allegations in the petition by failing to appear.

---

[1]        Mother also alleged that Father had neglected or abused G.M., but the superior court later found that her petition failed to set forth a factual basis for that ground.

The court then told Father's counsel that because of his failure to appear, she could not challenge the abandonment allegation. It did allow her to address the best-interests issue through cross-examination of Mother's witnesses, calling witnesses for Father, and giving a closing argument. Additionally, the court noted that the issues of abandonment and best interests were intertwined in this case, allowed Father's counsel leeway during cross-examination, and allowed Father's wife to testify about both the abandonment and best-interest issues.

¶7 The superior court took the matter under advisement and later issued a ruling terminating Father's parental rights on the abandonment ground. Father timely appealed, and we have appellate jurisdiction pursuant to the Arizona Constitution Article 6, Section 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).[2]

## ANALYSIS

¶8 On appeal, Father asserts that the superior court erred in four ways: (1) by failing to make formal waiver findings at the start of the severance hearing; (2) by violating Father's due process rights through limiting his attorney's participation; (3) by not allowing Father to appear telephonically at the severance hearing; and (4) because insufficient evidence supports its termination order.

 I. *The Superior Court's Waiver Findings Made Before the Severance Hearing Safeguarded Father's Due Process Rights.*

¶9 Citing *Brenda D. v. Department of Child Safety*, 243 Ariz. 437 (2018),[3] Father argues that the superior court did not make the necessary waiver findings pursuant to A.R.S. §§ 8-537(C), -863(C), and Arizona Rule of Procedure for the Juvenile Court ("Rule") 66(D)(2) at the start of the severance hearing and that the court's "more thorough [waiver] analysis" completed on the second day of the hearing does not cure the defect. Father is not challenging the sufficiency of the court's final, written waiver findings or the substance of those four findings—that he failed to appear without good cause, had notice of the severance hearing, was properly

---

[2] Absent material revision since the relevant date, we cite a statute's most current version.

[3] *Brenda D.* was decided after the severance hearing in this case; however, the Court's opinion was published before the final severance order was issued.

served, and had been previously admonished regarding the consequences of his failure to appear. He challenges only the timing of the court's oral findings. While we agree that under the holding of *Brenda D.*, the superior court should have made more formal waiver findings on the first day of the severance hearing (rather than on the second day), the court made sufficient inquiries before beginning the hearing to guarantee Father's due process rights.

¶10 Section 8-537(C) provides:

> If a parent does not appear at the . . . termination adjudication hearing, the court after determining that the parent has been [given proper notice], may find that the parent has waived [his] legal rights and is deemed to have admitted the allegations of the petition by [his] failure to appear. The court may terminate the parent-child relationship as to a parent who does not appear based on the record and evidence presented.

*See also* A.R.S. § 8-863(C). Rule 66(D)(2) gives effect to this statutory directive and provides that:

> If the court finds the parent, guardian or Indian custodian failed to appear at the termination adjudication hearing without good cause shown, had notice of the hearing, was properly served pursuant to Rule 64 and had been previously admonished regarding the consequences of failure to appear, including a warning that the hearing could go forward in the absence of the parent, guardian or Indian custodian and that failure to appear may constitute a waiver of rights, and an admission to the allegation contained in the motion or petition for termination, the court may terminate parental rights based upon the record and evidence presented if the moving party or petitioner has proven grounds upon which to terminate parental rights.

In interpreting this rule, the Arizona Supreme Court stated in *Brenda D.* that "to avoid due process concerns, a juvenile court's discretionary finding of wavier based on a parent's failure to appear for a termination adjudication hearing should be made at the start of the hearing, before the proceeding commences." 243 Ariz. at 444, ¶ 23.

¶11 However, a court's failure to strictly comply with the Arizona Rules of Procedure for the Juvenile Court does not necessarily require a

reversal. *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 22 (App. 2005). "Instead, noncompliance with the rules falls under either the harmless error (if an objection was made) or fundamental error (if no objection was made) framework." *Id.* In order "[t]o establish fundamental error, [the complaining party] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Id.* at ¶ 24 (quoting *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24 (2005)).

¶12        Although the superior court did not use the express language of Rule 66(D)(2) in its oral findings, it made the proper inquiries before the proceeding began to guarantee Father's due process rights. Father raised no issues with these findings during or after the severance hearing. Consequently, we review for fundamental error.

¶13        In November 2016, Mother served Father with the initial termination hearing notice. That notice complied with Rule 64 by warning Father that his failure to appear at future hearings could result in a waiver of his rights. With the court's permission, Father telephonically attended a pretrial conference in August 2017. There, the superior court scheduled the severance hearing and ordered Father's personal appearance.

¶14        Father did not appear in person, as ordered, at the severance hearing. On the first day of the severance hearing, the superior court confirmed that Father both knew of the hearing and understood that he was required to appear in person. Father's counsel told the court that Father was "aware of the order, that he appear in person" but that "[h]e has elected not to" do so. The superior court then confirmed this understanding with Father:

> [Court:]    You understood that you were supposed to be in court today?
>
> [Father:]   Yes, ma'am. I had a discussion with my counsel about that.
>
> [Court:]    So you disobeyed my order to be present in the courtroom today. You've been on the phone in every hearing. And I'm sure you clearly understood that you were supposed to be in court today. Isn't that --
>
> [Father:]   Yes, ma'am, I --

[Court:]      correct, [Father]?

[Father:]     My counsel and I did -- yes, my counsel and I did discuss that.

[Court:]      I'm asking you specifically, sir. You understood my order that you were to be present in court?

[Father:]     Yes, that is correct, ma'am.

¶15        The court next confirmed that Father knew the severance hearing could go forward in his absence. His counsel told the court that "[Father] is aware . . . that the Court may just proceed in his absence." The court replied, "And I will do that. There is no just cause, [Father], for you not to be present." To confirm this finding, the court extensively questioned Father. He explained that he had failed to appear for two reasons. First, he had an arrest warrant in Arizona from failing to pay child support, and second, he did not want an arrest jeopardizing his Texas employment. The court concluded that the "case w[ould] proceed with [Father] not being present in the courtroom." The superior court reaffirmed these initial waiver findings on the second day of the hearing using the express language of Rule 66(D)(2).

¶16        Considering this record, the court confirmed compliance with Father's due process rights before proceeding with the severance hearing. Moreover, Father does not demonstrate on appeal how the court's initial informal findings deprived him of a fair trial. Because Father has failed to allege, let alone demonstrate, prejudice on appeal, reversal on this basis is unwarranted.

>     II.     *The Superior Court's Restriction on Attorney Participation at the Severance Hearing Was Harmless Error.*

¶17        Father also argues the superior court denied him due process when it instructed his counsel she was "precluded . . . from an affirmative presentation of testimony [or any other evidence] on the issue of abandonment."[4] Under *Brenda D.* this instruction was error but, on the facts

---

[4]     Mother argues that Father waived this argument. However, after Father failed to appear, his counsel raised the issue of how extensively she could participate in the hearing and timely objected when the court restricted her from addressing the abandonment issue. Accordingly, we decline to apply waiver here. *See Marianne N. v. Dep't of Child Safety*, 243

of this case, the error is harmless. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 215, ¶¶ 32-33 (App. 2008) (applying harmless error analysis when court improperly restricted counsel's participation and counsel timely objected).

**¶18** *Brenda D.* held that the "waiver rules . . . do not apply to a parent's right to counsel at a termination adjudication hearing, a right that is unaffected by the parent's appearance or absence. A parent's counsel may fully participate in the hearing, including by contesting the motion's factual allegations." 243 Ariz. at 440, ¶¶ 2-3. However, "[i]f the parent does not appear before the termination adjudication hearing concludes, then the waiver of the parent's legal rights is effective throughout the hearing, and at its completion . . . the parent will be deemed to have admitted the factual allegations in the motion." *Id.* at 444, ¶ 24; *see also Manuel M.*, 218 Ariz. at 214, ¶¶ 24, 30 (concluding that, after a parent's waiver of rights, "factual allegations are deemed admitted but legal conclusions are not."). Error is harmless when it does not contribute to the verdict or affect a party's substantial rights. *Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 73, ¶ 12 (App. 2015) (citing *State v. Davolt*, 207 Ariz. 191, 205, ¶ 39 (2004)); *see also J & B Motors, Inc. v. Margolis*, 75 Ariz. 392, 395 (1953) (exclusion of admissible evidence is not reversible error if in all probability its admission would not have changed the result).

**¶19** Here, the court's instruction is harmless because Father failed to physically appear for the entire severance hearing. His failure to appear constituted an admission of the factual allegations in the severance petition. Notably, the severance petition alleged that:

- Father had failed to exercise his court ordered parenting time since mid-May 2015 and had "not spoken to [G.M.] since November 2015."

- Father did not notify the parenting coordinator that he was not receiving his visits with G.M. or otherwise "seek to have any parenting time with" her after September 2015.

- Father texted G.M. in December 2015 and told her she "was not welcome in his house."

---

Ariz. 53, 56, ¶ 13 (2017) (citing *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552 n.9, ¶ 33 (2005)) (decision to deem issue waived is "jurisprudential, not jurisdictional").

- G.M. had severe anxiety directly related to her relationship with Father and had been seeing mental-health professionals since 2013.

- Father had failed to financially support G.M. despite court orders to do so and had accumulated child support arrearages of about $60,000.

¶20        Bearing these facts in mind, Father does not demonstrate on appeal how the court's error in restricting Father's counsel affected the court's findings and judgment. Father states that "he [and his wife] would have testified . . . in his defense" but does not demonstrate how any potential evidence in that regard would have shown that "the factual allegations, albeit true, did not justify" a finding of abandonment.[5] *See Manuel M.*, 218 Ariz. at 215, ¶ 32. At most, Father argues that he "tried to keep in contact with G.M. through his wife," who sent G.M. some text messages and gifts. Even accepting this as true, Father's wife acknowledged that Father, himself, had not had meaningful contact with G.M. since 2015. In that regard, we note that, in recognizing the connection between the abandonment and best-interests issue, the court did allow Father's wife to testify as to the facts surrounding the abandonment allegation. On this record, the superior court's instruction was harmless error.

> III.    *The Superior Court Did Not Abuse Its Discretion by Not Allowing Father to Appear and Fully Participate Telephonically at the Severance Hearing.*

¶21        Father next asserts that the superior court abused its discretion by not allowing him to testify telephonically at the severance hearing. He argues that his telephonic participation would not have harmed the parties and "that Mother essentially forced [him] to either defend the Severance Petition in person in Arizona and be arrested [for nonpayment of child support], or appear telephonically and risk waiving his rights to contest the Severance Petition."

¶22        Arizona courts "may permit" parents to appear and participate via telephone for a severance hearing, but they are not required to do so. Ariz. R.P. Juv. Ct. 42; *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz.

---

[5]    Although Father listed many witnesses and exhibits in his disclosure statement, his counsel told the court she had only intended to call Father and his wife to testify.

231, 234, ¶ 14 (App. 2005) (superior court has "the authority, but not an obligation, to allow the parents to appear by telephone rather than in person"). The determination of what constitutes good cause for a parent's inability to appear is "largely discretionary," and we review that determination for an abuse of discretion. *Willie G.*, 211 Ariz. at 234, ¶ 13.

**¶23** With full knowledge and legal advice concerning the court's explicit order requiring personal attendance at the severance hearing, Father did not submit a written request to modify that order and/or to be allowed to appear and participate telephonically. Nor did he make an oral request in that regard until after the severance hearing had begun. On this record, the court did not abuse its discretion in disallowing such an appearance. The severance hearing is a pivotal point in the proceedings. Father had sufficient notice that the court required his personal appearance.

**¶24** The admitted factual allegations and evidence presented against Father established that, in the six months preceding the severance petition, he maintained less than minimal contact with G.M. and provided her little to no financial or emotional support. Had Father appeared at the hearing and contested these allegations, assessing his credibility would have been essential to the court's ultimate determination. Because the court had, at Father's request, allowed Father to appear telephonically until the severance hearing, it had no prior chance to observe him testify. We recognize that Father believed he was in a difficult position given the outstanding warrant for his arrest in Arizona, but his chronic and significant history of failing to pay child support created that very predicament. Thus, on this record, we cannot say that the superior court abused its discretion in requiring his personal appearance at the severance hearing.

     *IV.    Reasonable Evidence Supports the Superior Court's Termination Order.*

**¶25** Father also argues that no reasonable evidence supports the superior court's termination order because G.M. refused contact with him and Mother restricted his contact with G.M. by obtaining child-support judgments.

**¶26** We view the evidence in the light most favorable to sustaining the superior court's order and will only overturn the court's findings if they cannot be supported by reasonable evidence. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). In conducting that review, however, we do not reweigh the evidence presented at the severance

hearing. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011) ("The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings"). Although parents have a fundamental right to raise their children as they see fit, that right is not without limitation. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001). To sever this fundamental right, a superior court must find by clear and convincing evidence that one of the statutory grounds for severance exists. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

### A. Abandonment

¶27 As relevant here, section 8-533(B)(1) authorizes severance if "the parent has abandoned the child." "Abandonment" is defined as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). A finding of abandonment is premised on the parent's conduct, not the parent's subjective intent. *See Michael J.*, 196 Ariz. at 249-50, ¶ 18. The key consideration is whether, under the circumstances of the case, the parent "has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Id.*; *see also* A.R.S. § 8-531(1).

¶28 Here, Father admitted the factual allegations in the termination petition. These facts clearly establish that Father had abandoned G.M. for well over six months preceding the hearing. Likewise, in determining that Father abandoned G.M., the superior court made numerous factual findings. Pointedly, the court found that Father made no "concerted effort to . . . maintain a relationship with" G.M. or "provide her with financial support." Those findings are supported in the record by reasonable evidence.

¶29 In 2015, G.M.'s distress over her relationship with Father culminated in anxiety, depression, and suicidal ideations. Because of G.M.'s emotional conflict, the superior court reduced Father's parenting

time to every other weekend. It also created a detailed and specific plan as to how the parents could resolve any resulting conflicts over parenting time. According to that plan, Father's parenting time would be suspended if G.M. expressed or demonstrated self-harm inclinations. If Father's parenting time did not occur, he needed to notify and then work with the parenting coordinator. Following this order, G.M. attended a few visits but, after November 2015, she stopped engaging in them altogether.

¶30        Given these facts, Father argues that he could not have abandoned G.M. because she refused contact with him. While G.M.'s refusal made communication more difficult, Father had more than sufficient opportunities to address this issue. Instead of notifying the parenting coordinator or seeking judicial intervention, Father texted G.M. in December 2015 and told her that she "was not welcome in his house." Their relationship remained distant. Father made less than minimal efforts to exercise his parenting time or to repair his relationship with G.M. after November 2015. Between May and October 2016, Father sent G.M. one text (in July), but otherwise had no contact with her.[6] Nor did he notify the parenting coordinator about the cessation in visits. He also did not seek therapeutic counseling for or with G.M. Additionally, in the relevant several months, he sent her no cards or letters and provided her little to no financial support. In October 2016, Father emailed Mother requesting a visit with A.M. but did not mention G.M. at all. That same month, Father's wife sent G.M. a gift card. Overall, the record reflects that Father maintained less than minimal contact with G.M.

¶31        As Mother testified, there were many avenues beyond just text messaging that Father could have tried to repair his relationship with his daughter.

> He could have mailed her letters, sent her a card. He could have filed for parenting time. He could have filed for therapeutic reunification. He could have filed for simple counseling. He could have called her counselor and asked if it was possible to have his own sessions with the counselor and then grow to having joint sessions with her. He could

---

[6]        Without providing a time frame or any meaningful specifics, Father's wife testified that Father had "been blocked from [G.M.'s] phone, but he continues to reach out." Mother confirmed that G.M. had blocked Father from her phone at some point in early 2016, but testified that she instructed G.M. that "she cannot block him and that she needs to unblock him."

> have sent a gift. He could -- there's so many things he could
> [have done]. He could have emailed me and said could you
> hand [G.M.] this email.

However, he did not pursue most of these avenues. *See Michael J.*, 196 Ariz. at 250, ¶ 22 (when circumstances prevent a parent from exercising traditional bonding methods, he "must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary") (citation and quotation omitted). Overall, the record supports the court's finding that although G.M. "refused to see [Father] and be in his care," Father took little action—either with G.M. or with available third-party resources—to develop, improve or maintain a normal parent-child relationship with her.

¶32 Father also argues that Mother restricted his contact with G.M. by pursuing unpaid child support, resulting in various judgments and civil arrest warrants issued against him after July 2016. But Father concedes that those warrants existed because he failed to pay child support, and his argument is therefore unpersuasive. Father has had ample opportunity to litigate child-support issues in family court. Ultimately, he has been very inconsistent in paying Mother and admittedly has accrued significant arrearages. Regardless, Father's child-support judgments did not prevent him from contacting G.M. through email or social media or from personally sending her cards, gifts, or letters, or otherwise taking any meaningful steps to repair and maintain any parental relationship with G.M. On this record, reasonable evidence supports the superior court's determination that Father abandoned G.M.

### B. Best Interests

¶33 Father also argues that the superior court erred in finding that severance was in G.M.'s best interest. To sever parental rights, the court must find by a preponderance of the evidence that severance is in the best interest of the child. *Michael J.*, 196 Ariz. at 249, ¶ 12. Accordingly, a court must find either that a child will affirmatively benefit from the severance of a parent's rights or that a continued relationship with a parent will harm the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004).

¶34 The superior court found that G.M.'s "mental and possibly physical health would suffer if [Father] maintained any legal rights over her." This finding is supported by reasonable evidence. G.M. suffered from anxiety, depression, and PTSD for four years. Her therapist, who had been

seeing her weekly since May 2017, opined that G.M.'s mental-health issues stem primarily from "mental and emotional abuse and neglect that she experienced" from Father.

¶35        The therapist further testified that G.M. "has expressed [a] clear fear of being hurt" by Father, and has a specific, recurring fear of being left in her Father's care if something happened to Mother.    Father's treatment of G.M. has caused her to isolate and develop negative beliefs about herself.    It has also caused her "extreme anxiety" and depression, which has "prompted some incidents of self-harm [and] . . . suicidal thoughts."    When asked whether reconciliation was possible, G.M.'s therapist testified that before Father could engage in therapy with G.M., she "would have to have significant evidence that he has done a lot of work on his end."    But she could not recommend it "having [received] no information whatsoever on any work that he has done to address his issues that led to the abuse and the neglect."

¶36        For these reasons, G.M.'s therapist concluded that, in her professional opinion, continuing the parent-child relationship would be detrimental to G.M.'s mental-health and that severing Father's parental rights was in her best interest.  She also testified that terminating Father's parental rights would benefit G.M. because it would release her from her "ongoing anxiety" regarding Father, allow her to move forward in therapy, and provide her with finality and security.  This record supports the court's ruling on best interests.

**CONCLUSION**

¶37        The superior court's order severing Father's parental rights to G.M. is affirmed.

